SPARKS *et al. v.* RIDLEY *et al.; et vice versa.*

1. The plaintiffs claimed title to designated land as remaindermen under item 14 of the will of Henry P. Jones. This provision of the same will was construed in the case of *Sparks* v. *Anderson,* ante, 58 (102 S. E. 423), where it was held that the said will created a life-estate in Josephine V. Brazeal, with remainder to such child or children as she might have living at the time of her death; and if she should leave no child or children living at the time of her death, then in trust to be equally distributed among the testator's children per stirpes. " The trustees appointed in the will were not trustees for the life-tenant only, but for the life-tenant and the remaindermen, and the trust was executory, at least until the death of the life-tenant, when the possibility of her having children would become extinct, and it could be ascertained to whom the estate would ultimately go."

2. The original trustees appointed for the property devised by the testator applied for permission to resign their trust, and on petition of the life-tenant and all of the contingent remaindermen W. B. Sparks was appointed trustee of the property, with leave to sell. The order appointing Sparks as trustee and granting leave to sell was passed in vacation. Two of the petitioners were minors, who appeared by their brother, W. B. Sparks, as next friend. The court appointed a guardian

ad litem for them, who approved the application made to the judge of the superior court for an order of sale of the trust estate. It does not appear from the record that the minors were or were not personally served with notice of the proceedings. The order of court does recite: " it appearing from the record and evidence that all parties at interest have been served and are before the chancellor `[naming each one of the interested parties]." *Held,* that where the contrary does not appear from the record it will be presumed that the judge of the superior court, in removing such trustee and in appointing a successor, acted with all necessary jurisdictional requisites. *Winn* v. *Lunsford,* 130 *Ga.* 436, 439 (61 S. E. 9) ; *Peavy* v. *Dure,* 131 *Ga.* 104 (3), 111 (62 S. E. 47) ; *Woodbery* v. *Atlas Realty Co.,* 148 *Ga.* 712 (2) (98 S. E. 472) ; *Copelan* v. *Kimbrough,* 149 *Ga.* 683 (102 S. E. 162).

3. There being a valid trust as to the entire fee, the removal of the trustee created a vacancy which the judge of the superior court was authorized to fill by the appointment of a successor at chambers. Civil Code (1910), § 3744; *Heath* v. *Miller,* 117 *Ga.* 854, 860 (44 S. E. 13) ; *Woodbery* v. *Atlas Realty Co.,* supra.

4. A court of chancery, upon a regular application, may authorize a trustee to sell or convey the corpus of the trust estate. Such application may be made to the judge in vacation, on full notice to all parties in interest; and the order for such sale may be granted at chambers. A judge of the superior court at chambers has no authority, upon an original petition then presented, to order a sale of the legal estate of minors to real estate.

5. Under the undisputed evidence prescriptive title to the land in controversy had ripened against the trustee, who had legal title to the land, prior to the filing of this suit. Therefore the court properly directed a verdict in favor of the defendant and against four of the plaintiffs, and erred in directing a verdict in favor of the remaining plaintiff for a one-fifth undivided interest in the land and for mesne profits.

Nos. 1734, 1776. MAY 14, 1920. REHEARING DENIED JUNE 19, 1920.

Complaint for land. Before Judge Kent. Laurens superior court. October 30, 1919.

*L. D. Moore, Ira N. Eubanks,* and *W. J. Wallace,* for plaintiffs.

*Hines, Hardwick & Jordan, John S. Adams,* and *M. H. Blackshear,* for defendants.

GILBERT, J. 1-4. The controlling question in this case is whether the fourteenth item of the will of Henry P. Jones, under which all of the parties claim title to the land in controversy, created a legal or an equitable remainder in the children of Josephine V. Brazeal, and whether the trustees held the legal title to the same. That question has been determined in the case of *Sparks* v. *Anderson,* ante, 58 (102 S. E. 423), where this court passed upon the identical item of the same will. It was there held that

the will created a life-estate in Josephine V. Brazeal, with remainder to such child or children as she might have living at the time of her death; and if she should leave no child or children living at the time of her death, then in trust to be equally distributed among the testator's children per stirpes. "The trustees appointed in the will were not trustees for the life-tenant only, but for the life-tenant and the remaindermen, and the trust was executory at least until the death of the life-tenant, when the possibility of her having children would become extinct, and it could be ascertained to whom the estate would ultimately go." That case solved the questions ruled in the first, second, third, and fourth headnotes. Section 3755 of the Civil Code clearly empowers a court of chancery, upon a regular application, to authorize a trustee to sell and convey the corpus of his trust estate, and also provides that the application for such authority may be made to the judge in vacation on full notice to all parties in interest, and that the order for such sale may be granted at chambers. A contrary rule applies where there is no trust involved and nothing has been done to make the minors wards in chancery, except the application for leave to sell, and where the estate of the minors is legal and not equitable, although it may be represented as beneficial to them. *Webb* v. *Hicks,* 117 *Ga.* 335 (43 S. E. 738); *Mitchell* v. *Turner,* 117 *Ga.* 958 (44 S. E. 17); *Morehead* v. *Allen,* 131 *Ga.* 807 (63 S. E. 507), and authorities cited in these cases. As has been shown, the property conveyed was a trust estate. These authorities contain elaborate discussions which clearly indicate when the judge of the superior court, acting as chancellor at chambers, has the power to order a sale of the real estate of minors.

5. The only remaining question is whether prescriptive title has ripened against the plaintiffs. On October 24, 1889, "W. B. Sparks, trustee for Mrs. J. V. Sparks [formerly Josephine V. Brazeal], of the County of Bibb, of the one part," conveyed the property in controversy to "J. W. Joiner and J. R. Shepard of the County of Laurens, of the other part," for a stated valuable consideration. The remainder of the deed, after stating the particulars as above, was in the usual form of a warranty deed, conveying fee-simple title, and was signed "W. B. Sparks, trustee for Mrs. J. V. Sparks," and duly attested and recorded. We have

already held hereinbefore that the appointment of W. B. Sparks as trustee to succeed to the vacancy occasioned by the resignation of the trustees named in the will was valid; also that that portion of the order of the chancellor granting leave to W. B. Sparks as trustee to sell and dispose of the whole or any part of the trust property was a valid order. It also appears from the same order that the trustee was empowered to make a sale either "at public or private sale in such lots and upon such terms, for cash or credit, as to him may seem best." The order then proceeded to provide for the payment of past-due taxes, counsel fees and remuneration for the trustee, and required the trustee to make "annual return of his actings and doings, showing all lands sold and the reinvestment of the proceeds to the court of ordinary of Bibb County, as the returns of other trustees." W. B. Sparks, one of the plaintiffs, testified, with reference to the sale of the land and his deed to Shepard and Joiner, that "so far as I know Shepard and Joiner went in possession of all of these lands under this deed, and so far as I know they and their successors in title have remained in possession since the time I sold it to them. I don't know that to be true. I have no information about it." He further testified that he was selling the land as the property of his mother, Mrs. J. V. Sparks, and with her consent as trustee for her. He also testified that it was not his intention to sell the remainder interest, but he believed he was only selling the life-estate of his mother, and that he informed Shepard and Joiner that her title was derived from the will of Henry P. Jones, which was on file in Burke superior court, and a portion of it in Bibb superior court, and suggested that they read the will and the order of court authorizing the sale. J. W. Joiner, one of the grantees in the deed from Sparks, trustee, testified that Shepard, the other grantee, was dead; that he had no knowledge that he was not getting a good title, not the slightest idea that there was anything wrong or any trouble about the deed; "didn't know the deed ended at Mrs. Sparks' death," and believed at the time that he was getting a fee-simple estate in the property; that he was acting in good faith in making the purchase; never knew anything about the will of Henry P. Jones; never saw the proceedings appointing Sparks trustee, and Sparks did not inform him as to either; that he sold the turpentine privi-

leges to one Woodward, who worked the timber thereon for tur-
pentine. On January 9, 1893, Joiner and Shepard conveyed the
land in controversy to M. A. Currie, and the deed was recorded
on January 12, 1893. B. F. Currie, a son of M. A. Currie, testi-
fied that the latter was deceased; that he remembered when his
father owned the land, and that his father was in possession sev-
eral years and sold it to Donaldson. The deed of M. A. Currie
to H. B. Donaldson was dated December 9, 1903, and duly re-
corded. Donaldson conveyed the land to J. G. Ridley by deed
dated February 2, 1904. J. G. Ridley testified that he bought
the land for $7 an acre; that that was a fair market value at that
time; that Donaldson told him the title was good; that he had
heard about this claim; asked Donaldson about it, and the latter
told him that he had a good title, that Joiner bought the lands
through an order of court; that he bought in good faith believ-
ing he would get a good title, and made valuable and permanent
improvements on the place, beginning with the year 1909. The
present suit was filed in Laurens superior court on October 3,
1918. Throughout this time the land was in possession of ad-
verse holders under written title. All of the titles, so far as the
record discloses, were regular, and conveyed the entire fee in the
land, unless it be the deed of W. B. Sparks, trustee for his
mother, Josephine V. Sparks. The contention on the part of
the remaindermen is, that, the mother having only a life-estate,
this deed conveyed only the life-estate and that the grantees under
that deed and their successors in title obtained only the life-
interest held by Mrs. Sparks, which ceased and determined at
her death, May 6, 1915, and that their possession under all of
these deeds was restricted to the possession of the life-interest. Al-
though the deed of Sparks describes him as trustee for Josephine
V. Sparks and makes no mention of the remaindermen, he was
in fact trustee for the entire trust property, including the in-
terests of the children. The deed purports to convey the entire
fee, and operates as color of title. It appears by the uncontra-
dicted evidence that all of the successive grantees, certainly after
Joiner and Shepard, bought for a valuable consideration and
went into possession of the property under written evidences of
title conveying the entire fee, and that for more than twenty
years there was never any interference with these various posses-

sions, although the remainder interests were equitable and represented by W. B. Sparks, as trustee, one of the children. The legal title being in the trustee, prescription ran against him, and when he was barred all the cestuis que trust were barred. Civil Code (1910), § 4367; *East Rome Town Co.* v. *Cothran,* 81 *Ga.* 359 (8 S. E. 737); *Watts* v. *Boothe,* 148 *Ga.* 376 (96 S. E. 863); *Sparks* v. *Anderson,* 150 *Ga.* 58 (102 S. E. 423); Powell on Actions for Land, §§ 345, 346. Under the evidence prescription had ripened against the plaintiffs long before the suit was filed. The court, therefore, properly directed a verdict in favor of the defendant as against four of the plaintiffs, but erred in directing a verdict in favor of Robert L. Sparks, one of the plaintiffs, against the defendant Ridley. It is therefore ordered that the judgment complained of in the main bill of exceptions be affirmed, and the judgment upon which error is assigned in the cross-bill of exceptions be reversed.

*Judgment affirmed on the main bill of exceptions, and reversed on the cross-bill. All the Justices concur.*