LaROWE *v.* McGEE.

No. 8088.   JANUARY 16, 1931.

*Alvin L. Richards,* for plaintiff.
*Walter A. Sims* and *Joseph E. Berman,* for defendant,

GILBERT, J. LaRowe, the owner of a tract of land in Fulton County, subdivided it and sold two parcels at auction, on August 23, 1928, to McGee. The purchaser paid one fourth of the purchase-price and signed an agreement to pay the balance in three equal annual installments. At the time of the sale announcement was made that all papers necessary to complete the transaction would be prepared by an attorney named, and the purchaser was directed to go to the office of this attorney for the purpose of getting his deeds and completing the transaction. LaRowe executed and left with that attorney warranty deeds conveying the two parcels of land to McGee; and the attorney prepared notes covering the deferred payments, with deeds securing the same. McGee never called at the office of this attorney, but, after waiting several weeks, employed an attorney who wrote to the auctioneers and to LaRowe directly, demanding the return of the cash payments made by McGee, stating that he had endeavored to take possession of the property and found a man named McDonald hauling sand from the pit thereon; that McDonald claimed to hold a lease on the sand-pit; and therefore that McGee declined to close his trade. LaRowe instituted against McGee two suits seeking specific performance of the contracts of sale. They were consolidated, and the defendant pleaded as to both that McDonald held a lease covering the sand-bed on the property; that for this reason he refused to carry out the trade; and he prayed for judgment against plaintiff for the amount of the cash payments. Upon the trial the alleged lease was not introduced in evidence. During the trial a witness for the defendant testified that he held a lease on the sand-pit during the year 1930, and that the lease was signed by D. W. DeVore. The case having been submitted to a jury, verdict for the amount of the cash payments plus interest was returned in favor of the defendant. Motion for new trial filed by plaintiff having been overruled, he excepted.

■ The sole special ground for a new trial complains that the court instructed the jury as follows: "One of these contentions is, gentlemen, that the plaintiff leased a portion of the particular land involved in this case or this cause of action to a third person for the year 1930, the present year, and surrendered possession thereof to this third person, and therefore is unable at this time to deliver possession to the defendant in this case, in the event the jury should

find that the plaintiff is entitled to specific performance. The plaintiff, gentlemen, denies this contention of the defendant. The plaintiff says that he, through his attorney, Mr. Richards, did rent a house and several acres of land on an adjoining place or tract of land, that is, on land adjoining the land which is the subject-matter of this suit, to a third person to operate his truck-farm on, and did not rent any of the land described in the plaintiff's petition to any one, or authorize any one to rent the same for him. I charge you that if you find that the plaintiff has rented and delivered possession of the particular land described in the plaintiff's petition, or any portion thereof, and especially the sand-pit, to a third person,˙ then the plaintiff would not be entitled to recover, because he could not possibly be in a position to deliver possession of the property to the defendant in the event the jury should find the plaintiff is entitled to a decree of specific performance. On the other hand, if you find the plaintiff did not rent any portion of the land described in this suit, that is to say, particularly the sand-pit or bed, or authorize any one to rent the same for him, then the mere fact that you may believe from the evidence that some third person who had leased or rented some other portion of plaintiff's land, or undertook, without authority from plaintiff, to sublet the sand-pit or the particular land described in this suit to another person, and that this other person is now in possession of the sand-pit, this would not prevent a recovery in favor of the plaintiff, because the possession of the sand-pit by some other person, under the circumstances just outlined, would be an unlawful possession." The criticism is that there is no evidence that the property sold to ·defendant had been leased for· the year 1930, and no evidence to show that it had been leased to any one; and because the plaintiff had the right to rent the property during the pendency of the suit, and to account to the defendant for what he received. On the trial there was parol evidence to the effect that a named third person had what was called a lease on the "sand-pit" in question; that the lease was in writing; that it extended for a period of seven months, for a monthly payment of $10. It also appeared that this "lease" was made by persons claiming to represent the vendor as real-estate agents. S. W. Carson, a witness for defendant, testified: "I signed the lease contract which you exhibit to me, with Mr. McDonald and Mr. Williams. . . At that time I understand that J. S. LaRowe

owned the property under a foreclosure. I rented the property to Mr. J. T. McDonald and Mr. Williams. As to whether or not I had a sign on the sand-bed, I did not. We have always handled Mr. LaRowe's business—Clifton, my boy, and I. We were authorized to attend to anything for him that he had, as we would ourselves; and I thought that was a good trade for him, $10 a month, seven months. . . As to whether or not I wrote Mr. LaRowe and told him that I had rented the sand-bed for $10 a month I don't know, but I had perfect authority to do what I did there. Mr. Adams was the bookkeeper. I do not know whether the authority was in writing or not. If I have written authority, it ought to be with all my papers, which are in the bankrupt court. . . As to whether or not Mr. LaRowe knew that I had leased the sand-bed—I think so, without a doubt. As to whether or not he objected to it, I never heard any criticism of it." It was not contended that LaRowe, the vendor, had himself executed a lease of the property to any one, or that he had expressly authorized any one else to lease the sand-pit; and no such authority was in writing.

Sand, in a general sense, is a mineral. 18 Ruling Case Law, 1093, § 3. The Civil Code (1910), § 3617, provides: "Realty or real estate includes all lands and the buildings thereon, and all things permanently attached to either, or any interest therein or issuing out of or dependent thereon. The right of the owner of land extends downward and upward indefinitely." Accordingly, it has frequently been held that trees growing on land constitute a part of the realty, as provided by that code section. *Moore* v. *Vickers,* 126 *Ga.* 42 (54 S. E. 814). It has also been held that "manure made in the usual course of husbandry on a farm is so attached to and connected with the realty that, in the absence of an express stipulation to the contrary, it becomes appurtenant to and is treated as a part of the realty." *Brigham* v. *Overstreet,* 128 *Ga.* 447, 450 (57 S. E. 484, 10 L. R. A. (N. S.) 452, 11 Ann. Cas. 75). Also that a rail-fence is a part of the realty. Sand, as mentioned in this case, does not necessarily fall under the ruling in *Graham* v. *West,* 126 *Ga.* 624 (55 S. E. 931). For a learned discussion as to what is to be considered as a part of the land, see *Bagley* v. *Columbus So. Ry. Co.,* 98 *Ga.* 626, 631 (25 S. E. 638, 58 Am. St. R. 335). If sand is not a part of the realty, then to recover it a possessory warrant might issue from a justice's court. If for sand, why not for

any other part of the soil on which the sand rests or is held in place—why not for gravel, for stone, granite and marble, for coal in a mine, iron or any other ore, or for crude oil in the bowels of the earth. So is gravel. Coal, granite, marble, ores, and the like may require more tedious work, but Stone Mountain is itself being gradually quarried and transported away. It may require untold years to raze it to its foundation; but nothing, not even Stone Mountain, is permanently attached to the soil, in the sense that "permanently" means absolutely never ceasing. So, sand lying on land where it has been deposited by the forces of nature, though not actually attached to the soil (*Brigham* v. *Overstreet*, supra), is a part of the realty and goes with the land. Sand lying as it has been deposited by the forces of nature can not be conveyed so as to make the contract binding, except by written instrument. A lease of the right to take sand in such natural condition, which is a sale of the sand, must be in writing; otherwise the contract is not binding. The oral evidence merely tends to prove a "lease" of the sand-pit. Under all of the evidence given the only possible effect, there was a sale of a small amount of sand, valued at about thirty-five dollars. The evidence tended to show that the sand-pit was leased for seven months at $10 per month. The witness Carson, in addition to his testimony quoted above, swore: "I rented the place for $10 a month, because it was not worth $5. The fellow came and offered me $10 a month, and I thought it was a wonderful thing for Mr. LaRowe." The dates of the beginning and termination of the lease do not definitely appear. Even the year is not shown.

The property was sold to McGee for $5302.25, one fourth of which was paid down by him. McGee swore that he bought the land for a "sand-pit." The facts demand a contrary finding, and especially since no such theory was made known to the vendor. The deed from LaRowe to McGee, conveying the land in question, included the sand on the land, and all of the sand. Oral testimony to the effect that a third person claimed to have such a lease would avail nothing, unless the contract in writing were shown in evidence; and even if such a written contract is produced, if it is not signed by the owner of the land, it would be ineffective unless the authority of the agent who signed for the owner is evidenced in writing. *Brandon* v. *Pritchett*, 126 *Ga.* 286 (55 S. E. 241, 7 Ann. Cas. 1093).

And finally the evidence as to lease is too indefinite to show any binding lease or sale of sand for any particular year. The evidence as a whole is too vague and indefinite to show any binding contract as to the sand, and shows an insignificant and temporary interference with the purchaser's possession. Any equity due the purchaser may be adjusted between the parties in the final decree. For these reasons, under the evidence, there was a total failure to show any defense because any third person interfered with the possession of the vendee. The court erred in giving the instruction of which complaint is made. In *Johnson* v. *Latimer,* 71 *Ga.* 470 (3), it was ruled that where the statute of frauds was not pleaded, and there was no demurrer or objection to testimony so as to invoke a ruling of the court below on the subject, the court will not grant a new trial on the ground that the verdict is contrary to law because it appears that the contract sought to be enforced should be in writing. In this case the proceeding is not to enforce the alleged contract for the sale of sand, but to enforce the contract between LaRowe and McGee for the sale of the two lots of land. McGee, the defendant, undertook to set up the contract for the sale of the sand as a collateral issue to show inability to obtain possession of the land.

■ For the reasons above stated the judgment refusing a new trial must be reversed. But it may be contended that the judgment should be upheld on the other ground set up by the defendant as a reason why the contract should not be enforced. That reason was that the defendant vendee was so intoxicated, at the time he bid off the property at auction sale, that he was incapable of making a binding contract. The Civil Code (1910), § 4239, provides: "A drunkard, when actually intoxicated to such an extent as to deprive him of reason, can make no valid contract with any one cognizant of the fact of his condition. If the party contracting was at all instrumental in producing the state of intoxication, the contract is invalid, however partial the intoxication may be." It is not hinted that the vendor was even remotely instrumental in producing the intoxication. Where a defense of this kind is pleaded to set aside a contract which on its face is regular in every respect, and where there is no evidence tending to show that the vendor had knowledge of the incapacity of the vendee or in any way took advantage of that condition, or that the contract was unfair or in-

equitable, the evidence as to the intoxication should be closely scrutinized. Compare *Weldon* v. *Colquitt,* 62 *Ga.* 449 (4) (35 Am. R. 128); *Bing* v. *Bank of Kingston,* 5 *Ga. App.* 578 (63 S. E. 652); 19 C. J. 813. In the present case the defendant seems to recollect a number of things that happened on the day of the sale, and to have totally failed to recollect other things happening about the same time. He testified: "I attended the auction in August, 1928, of the LaRowe property that Todd-Worsham held. . . I was drinking pretty heavily that day, and I do not remember all that happened. I had been drinking for two or three days, and I did not know everything that was happening at that time. After I discovered that I had bought this property, I seen I had bought it, and I tried to get possession, and found there was a party that had a lease on it. I started my truck to hauling, and was down at the pit one morning, fixing to haul, and the party come in that had the lease. I had bought the property for a sand-bed. The paper you show me is the lease that Mr. McDonald showed me he had on the property. J. P. McDonald and W. H. Williams were the ones who had the lease. Something like a week or ten days after the auction, I went to Todd-Worsham Company and told them I had found out about this lease. I did not hear any announcement made on the day of the sale that I was to go to Mr. Richards' office. Mr. McGee of the Todd-Worsham Company never did tell me to go to Mr. Richards' office about the deed, as well as I recollect. . . It was the next day or so afterwards [referring to the sale] before I learned that I had bought any property. When I learned about it, I went to Todd-Worsham Company in the next two or three days to see about it. In the meantime I saw Mr. McDonald, and he was hauling sand from there. . . I do not know who wrote those checks that I signed [the two checks given for the down payments on the two lots]. I have a slight recollection of signing them. I did not write any part of them except my name. . . From the looks of the signature that I put on there, I don't think I could read much that day. I did not know anything that was going on at that time. . . I do not remember talking to Mr. LaRowe that day. I never met him out there; they just told me that he was the man who owned the property. The reason I remember that so well, he got up on a truck and made a statement that it was his property, and there was nothing against the property at all. I re-

member him saying that. As to why I do not remember all the rest that occurred out there that morning, my mind just went and come." It is significant also that the defendant states that within the next day or so, or a week or ten days (it is not certain which), he went to Todd-Worsham Company, auctioneers. At that time he indicated no intention to avoid the contract on account of drunkenness. It would seem, therefore, that at that time he had not yet determined to deny responsibility on account of intoxication. That defense seems to have been decided upon thereafter. This was sufficient to show ratification of the contract, even if made while intoxicated. *Strickland* v. *Parlin & Orendorf Co.,* 118 *Ga.* 213 (44 S. E. 997).

 For all of these reasons we think the court erred in refusing a new trial. *Judgment reversed. All the Justices concur.*