Helen M. Heyl et al., Appellants, v. Northern Trust Company et al., Appellees.

Gen. No. 41,747.

Heard in the first division of this court for the first district at the June term, 1941. Opinion filed December 22, 1941. Rehearing denied January 5, 1942.

ROSENTHAL, HAMILL, ELDRIDGE & KING, of Chicago, for appellants; SIDNEY L. ROBIN, NEWELL A. CLAPP and DOUGLASS PILLINGER, all of Chicago, of counsel.

WILLIAM W. MILLER, of Chicago, for appellees.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiffs filed a complaint in chancery, asserting that there was ambiguity in the will of their father, Adolf E. Mayer, deceased, with special reference to the duties of the trustee. The trustee was made party defendant with the grandchildren of Adolf E. Mayer, who are the children of plaintiffs. The principal controverted point was as to the action of the trustee with reference to some real estate in Texas, and especially how the income derived from a sale of oil taken from the land should be divided.

Adolf Mayer died testate February 13, 1910, and his will was admitted to probate by the probate court of Cook county, Illinois. After providing for payment of his debts and making several specific devises and bequests, the testator gave all the residue of his estate to the Northern Trust Company of Chicago, as trustee.

This trust has been accepted and the trustee has continuously acted in that capacity. The trustee was directed to pay all the net income of the trust to the testator's wife for her life, and upon her death to the testator's three children, Helen, Vera and Adolph, Jr., the plaintiffs in this case. Upon the death of the three children the trust was to terminate and the trust property should be distributed to all of the then surviving grandchildren of the testator.

Pursuant to the will, Mrs. Mayer, the widow, received the net income of the testamentary trust and certain other property. She died June 26, 1922, leaving a will, whose provisions have been carried out.

Subsequent to their father's death, all of the three children married. Helen Mayer's name is now Helen M. Heyl; she has two children, both of whom are now adults and are named as defendants, but have defaulted in this case. Vera Mayer's name is now Vera M. Hankey; she has no children. The third child, Adolph E. Mayer, Jr., has two children: Adolph E. Mayer, III, and Margaret Mary Mayer, who are minors, residing with their father and wholly dependent on him financially. William W. Miller has been appointed guardian *ad litem* to represent them in this suit and has filed a brief in their behalf.

The trustee received from decedent's estate four parcels of real estate, including an undivided quarter interest in certain Texas real estate, which is the primary matter of interest in this litigation. By June 1911, the trustee had sold all of the real estate except the interest in the Texas land, and the proceeds of these sales were added to the principal of the trust. Subsequently, in March 1936, the trustee, together with the other owners of the Texas property, entered into an oil lease of this land, granting to the lessee the right to drill and produce oil for a term of five years, or as long thereafter as oil, gas or other minerals should be produced from the property. In addition to a cash con-

sideration for the lease paid to the owners of the property, there was a provision for the payment of royalties to the owners on the oil and gas produced. August 1, 1937, oil and gas were developed from the Texas property.

From this property the trustee received its share of the consideration money paid by the lessee, and also royalties. The pivotal question presented is as to the division of this income. The trustee, after paying expenses, allocated the income on the basis of ascertaining the sum which, with simple interest thereon at the rate of 5 per cent per annum from August 1, 1937 (date of the discovery of oil and gas), would equal the net amount of the moneys received by it from this source. The sum so ascertained was treated as principal and the residue as income. Plaintiffs' position is that the trustee, after paying all expenses relating to the Texas property, should apportion the net amount of the moneys remaining by ascertaining the sum which, with interest thereon at 5 per cent per annum from February 13, 1911 (which is one year after the death of the testator), and compounded semiannually, would equal such net amount of moneys, and that the sum so ascertained should be treated as principal and the balance as income.

The guardian has filed a cross-appeal, asking that all the proceeds from the sale of oil be credited to principal, but says that if this court should hold that the net proceeds were properly allocated by the trustee between principal and income, then the method of computing by simple interest, from August 1, 1937, and not by compound, is correct.

The will of the testator provided: ''I hereby authorize and direct my said Trustee, as soon as in its judgment it can be done without sacrifice, to sell and dispose of any real estate which I may own at the time of my decease . . . and to add the proceeds from the

sale of said real estate to the moneys and funds comprising the principal of my estate, to be invested as hereinafter set forth.'' And: ''I further order, direct and empower my said Trustee to sell and dispose of any other real estate that may at any time after my death become a part of my trust estate, by reason of foreclosure or otherwise, and to add the proceeds of the sale of said real estate to the moneys and funds comprising the principal of my estate to be invested by my said Trustee as hereinabove provided; . . .''

The chancellor decreed that the apportionment should be made by computing the income of the plaintiffs as beginning August 1, 1937 (when oil was discovered), and at simple interest, instead of February 13, 1911, at compound interest. Plaintiffs assert that in so decreeing the chancellor erred. Complaint is also made of the order with reference to the costs and attorneys' fees.

Plaintiffs cite certain cases holding that where the trustee is under a duty to sell trust property, the net proceeds of the sale, when made, are to be apportioned between the life beneficiaries (plaintiffs in this case) and the remaindermen. This was the rule of apportionment followed by the chancellor in its decree, and this is supported by a number of cases. *Edwards v. Edwards,* 183 Mass. 581; *Furniss v. Cruikshank,* 230 N. Y. 495; *Love v. Engelke,* 368 Ill. 342; See also Restatement of the Law of Trusts, § 241.

It also may be stated that the oil lease of the Texas property of March 1936, entered into by the trustee was a sale by it of a portion of the Texas property. *Ohio Oil Co. v. Daughtee,* 240 Ill. 361; *Triger v. Carter Oil Co.,* 372 Ill. 182. The guardian *ad litem* does not seem to dispute this as a general proposition, but cites cases supporting the point that the right to take oil from the land can be sold separately from the land itself. *Ohio Oil Co.* case. The guardian says that

under the provisions of the will there was no duty to sell this Texas land until, in the judgment of the trustee, it could be sold without sacrifice.

The record shows that in 1911 the land could not have been sold for more than $300, which was less than the testator paid for it. A reasonable construction of the provision of the will directing the trustee to sell the real estate is that it does not direct the trustee immediately to sell the Texas property. In fact, the clear implication of the words is to the contrary. Although the trustee was under the duty to sell, it was under no duty to sell until the property could be sold without sacrifice. The lease of the oil rights of March 1936, was for a consideration much larger than that which the testator paid for the land originally. Hence, it could then be sold by the trustee "without sacrifice."

A further consideration fixing the time when it became the duty of the trustee to sell is that, until the oil was discovered and reduced to possession, the trustee had no title whatever to it. It did not become its property until it had dominion and control by actual possession. It was so held in *Ohio Oil Co. v. Indiana*, 177 U. S. 190, 208. This is also the law in Illinois, (*Bruner v. Hicks*, 230 Ill. 536, 542; *Triger v. Carter Oil Co.*, 372 Ill. 182); and in Texas (*Bender v. Brooks*, 103 Tex. 329, 335). Until this oil was produced from the Texas property on August 1, 1937, the rule of apportionment did not apply, as there was no duty upon the trustee before that time. The chancellor correctly decreed an apportionment as of August 1, 1937.

The suggestion of the guardian that there is no imperative duty to sell the Texas land until, in the judgment of the trustee, it could be sold without sacrifice, is met by the rule above stated, that a grant of the oil for an unlimited duration is a grant of a freehold estate, and in legal effect a sale of a portion of the land. *Triger v. Carter Oil Co.*, 372 Ill. 182.

We do not agree with the contention of plaintiffs that the apportionment of the oil proceeds should be determined by compounding interest semiannually, and the court properly followed *Love v. Engelke*, 368 Ill. 342, and the Restatement of the Law of Trusts, § 241, by computing the apportionment at simple interest rather than compound interest.

There is some force in the showing that the plaintiffs have acquiesced in the action of the trustee in holding the Texas property until the present time, with the result that the income paid to them is as high or higher than might be expected at the time of the testator's death. They have been benefited substantially by the retention of the Texas properties.

We hold that the chancellor properly charged one half of the costs of this proceeding to the principal account and one half to income. As was said in 4 Bogert on Trusts and Trustees, § 805 at page 2335, while the cost of litigation incurred by the trustee is generally placed upon the principal of the trust fund, ". . . the matter is one for the discretion of the court, and apportionment of the expense between life *cestui* and remaindermen is not uncommon." It should be borne in mind that the trustee did not institute this proceeding, and there is in fact no ambiguity in the language of the will which demanded construction by the courts. The suit was essentially an attempt by the plaintiffs to obtain all the income from the estate, leaving no part of this for their own children,—the testator's grandchildren. Under such circumstances it would be inequitable to have the grandchildren pay the entire cost of the proceeding, brought solely for the parents' own benefit.

The decree was proper and is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.