19753.   ROCKEFELLER *v.* FIRST NATIONAL BANK
OF BRUNSWICK, Trustee, *et al.*

ARGUED JULY 8, 1957—DECIDED SEPTEMBER 6, 1957—REHEARING
DENIED OCTOBER 11, 1957.

494

500

*B. D. Murphy, James N. Frazer, Edward E. Dorsey, Nightingale & Liles,* for plaintiff in error.

*Bouhan, Lawrence, Williams & Levy, Gowen, Conyers, Fendig & Dickey, Hugh Dorsey, Jones, Williams, Dorsey & Kane, William B. Watson, Jr., Spencer Connerat, Malcolm Maclean, Shouse & Barker, Reese, Bennett & Gilbert, Shearman, Sterling & Wright, Beer, Richards, Lane, Haller & Buttenwieser, Nightingale & Liles,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) ■ While the petition of the trustee refers to the act of 1953 (Ga. L. 1953, Jan.-Feb. Sess., p. 44) as authority for the court to approve the execution of what is termed a lease of a portion of the trust property, and counsel for the plaintiff in error insist that the petition is thus confined to whatever authority may be con-

ferred by this act, which is attacked as being unconstitutional and void, and that for this reason the petition fails to state a cause of action, we cannot agree that the proceeding is so limited in its scope. The petition is addressed to the Superior Court in and for Camden County, Georgia, and the Honorable Douglas F. Thomas, Judge of said Court. The superior courts have exclusive jurisdiction in equity cases (1945 Constitution of Georgia, Art. 6, Sec. 4, Par. 1; Code, Ann., § 2-3901), and authority to exercise the powers of a court of equity (Code §§ 24-2615 (2), 37-101, 37-124, 37-901), and the judges thereof have authority "To grant all other writs, original or remedial, either in law or equity, that may be necessary to the exercise of their jurisdiction, which is not expressly prohibited." Code § 24-2616 (3). Where a petition is filed relative to an infant's or incompetent's estate or person, which seeks relief against several persons, one of whom is a resident of the county where the petition is filed, the superior court acquires jurisdiction, and the infant or incompetent immediately becomes a ward in chancery, and under the general powers of a court of equity, the judge of the superior court, presiding as chancellor, is specially vested with authority and power to superintend and care for both the person and property of the ward. *Chase* v. *Bartlett*, 176 *Ga.* 40 (2) (166 S. E. 832); *Dooley* v. *Scoggins*, 208 *Ga.* 200 (2) (66 S. E. 2d 62). Code §§ 37-1301, 37-1303, 37-1304, 81-204, 81-205, and 108-408 direct the manner and procedure to be followed in applications for sales of property belonging to trust estates, and provide that the application for such authority may be made to the judge in vacation on full notice to all parties in interest, and that the order for such sale may be granted at chambers, and clearly empower a court of chancery upon such an application to authorize a trustee to sell and convey the corpus of his trust estate. In the present case the trustee has followed these rules of law governing such applications; the application is filed in the county where the trust property is located, in the county where one of the beneficiaries of the trust resides, and all interested parties were required to be served, the nonresident parties as provided for by Code §§ 81-204, 81-205, and by the clerk of court mailing by registered mail to them at their respective addresses as shown by the petition a copy of the petition and the order of court thereon, and by the

clerk of court mailing to them at the same address a copy of the newspaper in which the citation appears with the same plainly marked; and a guardian ad litem was appointed for all minor beneficiaries under the will, born and to be born. The proceeding is, therefore, sufficient to invoke the general equity power of the court, irrespective of the act of 1953, supra, and the questions raised by the demurrer as to the validity of that act will not be determined. *Richards* v. *East Tennessee, Va. & Ga. Ry. Co.*, 106 *Ga.* 614 (5) (33 S. E. 193, 45 L. R. A. 712); *Mitchell* v. *Turner*, 117 *Ga.* 958 (44 S. E. 17), and cases there cited; *Sparks* v. *Ridley*, 150 *Ga.* 210 (103 S. E. 425); *Gilmore* v. *Gilmore*, 208 *Ga.* 245, 247 (65 S. E. 2d 813).

■ We come now to the main questions raised by the general demurrer in the case, namely, whether the grant by the Superior Court of Camden County, acting under its general equity power, of authority to the trustee to execute the instrument disposing of the minerals located on a portion of the trust property is contrary to the intent and provisions of the trust created by the will; beyond the scope of any powers granted by the will creating the trust, and whether the order sought would authorize and direct the trustee to commit waste of the trust assets.

We think it proper first to determine the nature and character of the instrument here involved and the transaction here sought to be authorized. It is clearly not a lease or rental of property such as was dealt with by this court in *First National Bank of Atlanta* v. *Robinson*, 209 *Ga.* 582 (74 S. E. 2d 875), relied upon by the plaintiff in error, nor are the wills in the two cases, or the trusts created by them respectively, at all similar. As pointed out in the *Robinson* case, supra, the will there involved expressly limited the duration of the trust and the power of the trustee to lease the property, and provided that at the time fixed for termination of the trust and the distribution of the corpus of the estate, the property was to go to the designated beneficiaries "in fee simple and free from any and all trusts of every character," and expressly limited the power of the trustees to execute rental leases on the property "beyond the several dates . . . for the distribution thereof." We there held that to authorize the lease sought, extending over a period of more than one hundred years, would violate the express limitations fixed by the will itself. But

as we construe the present will, that case, and the ruling there made, has no application here. In the first place, the authority here sought is not for such a lease or rental of the property as was involved in the *Robinson* case, supra.

In Georgia, minerals in place are a part of the land—they are real estate. Code § 85-201 provides: "Realty or real estate includes all lands and the buildings thereon, and all things permanently attached to either, or any interest therein or issuing out of or dependent thereon. The right of the owner of lands extends downward and upward indefinitely." While Code § 85-806 refers to the grant of a mining interest in land as a "lease," the authorities uniformly hold that minerals in place are a part of the real estate, with all the attributes and incidents peculiar to the ownership of land. 58 C. J. S. 212, § 133; *LaRowe* v. *McGee,* 171 *Ga.* 771, 775 (156 S. E. 591); *Wright* v. *Martin,* 149 *Ga.* 777, 782 (102 S. E. 156). In United States *v.* Shoshone Tribe of Indians, 304 U. S. 111, 116 (58 Sup. Ct. 794, 82 L. ed. 1213), it is held that "Minerals and standing timber are constituent elements of the land itself." See also *Davison* v. *Reynolds,* 150 *Ga.* 182 (103 S. E. 248). In 36 Am. Jur. 301, § 30, it is said: "Contracts for the sale of mineral lands or minerals are governed in the main by the principles applicable to sales of real property generally." Thus a "lease" of the minerals in place is a sale of a portion of the land, and authority to sell all or any portion of the trust property includes the right to sell or lease the minerals in place thereon. See in this connection *Brown* v. *Mathis,* 201 *Ga.* 740, 744 (41 S. E. 2d 137); Layman *v.* Hodnett, 205 Ark. 367 (168 S. W. 2d 819); Avis *v.* First National Bank, 141 Tex. 489 (174 S. W. 2d 255); Franklin *v.* Margay Oil Corporation, 194 Okla. 519 (153 Pac. 2d 486); Heyl *v.* Northern Trust Co., 312 Ill. App. 207 (38 N. E. 2d 374).

Under Item One of the will of Mrs. Carnegie she left her Cumberland Island real estate in trust during the life of the survivor of her children therein named, and provided a substantial income by Item Two of the will to be used to maintain the property, and directed her trustees to permit those of her children who desired to do so to occupy the land free of rent. It was clearly not the intention of the testatrix that this property should in all events be held until the death of the last surviving child. On the

contrary, she provided two ways by which her children could terminate the trust and take the corpus themselves. The first of these, Item One (c), provides that her children could claim possession of the corpus and terminate the trust by unanimous agreement for a division of the property in kind, in which event each received fee-simple title to his or her portion of the land. The second method for terminating the trust is contained in Item One (d), which provides that if at any time a majority of her children then living who had not disposed of their interest under Items One (a) and One (b) requested the trustees to sell *all* or *any portion* of the trust property, it thereupon became the trustees' duty to comply therewith, the proceeds derived from the sale to be paid to her children then living, the descendants of deceased children, or to the purchasers of the interest of any of her children who had sold their interest in the trust lands under the authority so to do conferred by Items One (a) and One (b).

Subparagraphs (e) and (f) of Item One further demonstrate that the testatrix intended to provide for the sale of the Island property in whole or in part, subparagraph (e) providing that the power of sale given the trustees might be exercised at public or private sale "and upon such terms of sale as their best judgment may dictate, without the necessity of an order from any court," and subparagraph (f) provides that "In the event the trust herein created for said Island property, or *any portion thereof*, has not terminated before the death of the last survivor of my said children, the said trust shall then terminate and the whole or any portion thereof remaining unsold shall be vested, but not before, absolutely in such persons" as are therein described as remaindermen.

Similar provisions are found in Item Two, which established the trust of the Carnegie Building. There she anticipates a sale of the Island property, and provides for the subsequent sale of the Carnegie Building and for a disposition of the proceeds. Then by paragraph two of Item Six the testatrix provided: "In all cases where I have authorized and directed my executors as trustees to make the sale of real estate, including my Island property and the 'Carnegie Building' and the real estate upon which the same is located, I authorize my trustees to lay out said real estate in such plan as they may deem most advantageous

for its sale and to acquire or create such ways and other easements therein or in relation thereto as seem to them advantageous, and to make sale of such real estate without any proceedings in court for that purpose, and to convey the same for such price, for such covenants of title and upon such terms of payment or security as they may deem to be for the best interest of my estate, and to receive and receipt for the purchase money and proceeds of sale without any duty arising on the purchaser to see to the application of the purchase money."

Under the foregoing provisions of the will there can be no doubt that Mrs. Florence C. Perkins, the only surviving child of the testatrix, is clothed with the right to require the trustee to sell *all* or *any portion* of the Island property, but having been adjudged incompetent, she is not capable of making that election for herself. Under such circumstances, a court of equity, in the exercise of its broad, comprehensive, and plenary jurisdiction of trusts and the estates of wards of chancery, may make the election on her behalf, if it finds such to be to her best advantage, and to the best interest of the estate. *Ansley* v. *Pace & Co.,* 68 *Ga.* 402; *Richards* v. *East Tennessee, Va. & Ga. Ry. Co.,* 106 *Ga.* 614 (33 S. E. 193, 45 L. R. A. 712); *Sangster* v. *Toledo Mfg. Co.,* 193 *Ga.* 685, 691 (19 S. E. 2d 723); *Palmer Brick Co.* v. *Woodward,* 135 *Ga.* 450 (69 S. E. 827); *Palmer Brick Co.* v. *Woodward,* 138 *Ga.* 289 (75 S. E. 480); Philadelphia Trust, Safe Deposit & Insurance Co. *v.* Allison, 108 Me. 326 (80 Atl. 833, 39 L. R. A. (NS) 39). See also *Cooney* v. *Walton,* 151 *Ga.* 195 (106 S. E. 167); *Orr* v. *Orr,* 197 *Ga.* 866 (30 S. E. 2d 900); *Turner* v. *Prigmore,* 202 *Ga.* 377 (43 S. E. 2d 259); *Dooley* v. *Scoggins,* 208 *Ga.* 200 (66 S. E. 2d 62).

Applying the foregoing authorities to the provisions of the will here involved, and to the allegations of the petition, a cause of action was stated, and the trial court did not err in overruling the general demurrers thereto.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*