21846.  CARNEGIE et al. v. FIRST NATIONAL BANK OF BRUNSWICK, Trustee, et al.

Argued November 14, 1962—Decided January 16, 1963— Rehearing denied January 30, 1963.

*L. J. Bennet, John Gilbert, John M. Gayner, III, Bennet, Gilbert, Gilbert & Whittle, B. D. Murphy, James N. Frazer, Edw. E. Dorsey, Powell, Goldstein, Frazer & Murphy, John T. Marshall,* for plaintiffs in error.

*Conyers, Fendig, Dickey & Harris, Gambrell, Harlan, Russell, Moye & Richardson, E. Smythe Gambrell, Charles A. Moye, Jr., John W. Chambers, James H. Bratton, Jr., Cicero Garner, Jr., Barrie L. Jones,* contra.

Grice, Justice. The issues for determination here are whether

an adopted son of one of the testatrix's grandsons is entitled to any interest in certain property under her will and, if so, the quantity of that interest.

The testatrix, Mrs. Lucy C. Carnegie, was a resident of the State of Pennsylvania. She executed her will in 1912 and made two codicils in 1913. Upon her death on January 16, 1916, her will, with these codicils, was duly probated in both Pennsylvania and Georgia. In addition to disposing of other property the will devised Cumberland Island, Georgia, to trustees, set forth the purposes and uses of this trust and directed final disposition of that Island property. The First National Bank of Brunswick has since become trustee of this trust.

The testamentary provision in question is the second paragraph of the first codicil: "In the event the trust herein created for said Island property, or any portion thereof, has not terminated before the death of the last survivor of my said children other than my son William Coleman Carnegie, the said trust shall then terminate and the whole or any portion thereof remaining unsold shall be vested, but not before, absolutely, in such persons and for such estates and proportions as would take the same under the intestate laws of the State of Pennsylvania had I died intestate possessed thereof, and all my named children had survived me and died intestate, saving and excepting the children of my son William Coleman Carnegie shall not be entitled to any interest therein or any part thereof; nor shall the wife of said William Coleman Carnegie be entitled to any interest therein or any part thereof under the said intestate laws or under any other laws of said State of Pennsylvania; nor shall the husband of any of my daughters be entitled to any interest therein as tenant by courtesy."

The death on April 15, 1962, of Florence C. Perkins, the last surviving child of the testatrix, precipitated this phase of litigation over Mrs. Carnegie's will. Previously this court has considered her will upon different questions. *Rockefeller v. First Nat. Bank of Brunswick*, 213 Ga. 493 (100 SE2d 279) ; and *Rockefeller v. First Nat. Bank of Brunswick*, 213 Ga. 766 (102 SE2d 28).

Since no sale or distribution of the Island property had been made prior to the death of the last surviving child, the First National Bank of Brunswick, as trustee, filed in the Superior Court

of Camden County its bill for direction, praying, among other matters, that determination be made as to the persons entitled to the corpus of the trust property, namely Cumberland Island.

All of the claimants were made parties defendant. The testatrix had eight children but one son was expressly excluded by the will and two others left no descendants, so only five shares resulted. That of Thomas Morrison Carnegie is the only one in issue here. The salient genealogical facts as to his branch follow.

Thomas Morrison Carnegie died in 1944 and his wife died in 1952. His surviving children were (1) Thomas Morrison Carnegie, Jr., who died in 1954 and (2) Carter Beggs Carnegie, who died in 1957. The first, Thomas Morrison Carnegie, Jr., left no wife but was survived by two children, Thomas Morrison Carnegie, III, and Andrew Carnegie, III. The second, Carter Beggs Carnegie, was survived by his widow, now Polly Carnegie Pence, and an adopted son, Henry Carter Carnegie. Carter Beggs Carnegie had no natural children, but, on June 18, 1956, adopted the adult son of his wife by a prior marriage.

Trial was before the judge without a jury and, with no material facts in dispute on the issues involved here, resulted in the ruling that the adopted son is a remainderman under Mrs. Carnegie's will and is entitled to a one-tenth interest in the property (one-half of the Thomas Morrison Carnegie branch's share) and that Thomas Morrison Carnegie, III, and Andrew Carnegie, III, is each entitled to a one-twentieth interest in the property (the other one-half of the Thomas Morrison Carnegie branch's share). It further ruled that the widow of Carter Beggs Carnegie, Polly Carnegie Pence, is not a remainderman under the will and is not entitled to any interest in the property.

To the decree declaring Henry Carter Carnegie a remainderman under Mrs. Carnegie's will and entitled to an undivided one-tenth interest in the Cumberland Island property and declaring Thomas Morrison Carnegie, III, and Andrew Carnegie, III, also remaindermen and entitled to a one-twentieth interest each in such property, the last two named filed an amended motion for new trial, contending that by a proper construction of the quoted portion of Mrs. Carnegie's will, Henry Carter Carnegie, the adopted son, is not a remainderman, and that they are entitled to the entire Thomas Morrison Carnegie branch's share

of such property. All of the grounds of their motion for new trial raise that single issue. Error is assigned by them upon the overruling of their motion for new trial.

■ In determining whether Henry Carter Carnegie, an adopted person, is a remainderman of the trust established by Mrs. Carnegie's will, we must first decide what law is applicable to that issue.

(a) As to whether the law of Pennsylvania or that of Georgia controls, the parties here agree that since the trust involves property located in Georgia, Georgia law is to be followed, except that since the will's formula for identifying the remaindermen is the intestate law of Pennsylvania, that law must be used to ascertain them. For this reason our own court's decisions, based on Georgia law, as to whether certain terms of a will are intended to refer to natural or blood relationships to the exclusion of adopted children, are not applicable. See in this connection such cases as *Comer v. Comer*, 195 Ga. 79 (23 SE2d 420, 144 ALR 644); *Brookins v. Citizens & Southern Nat. Bank*, 205 Ga. 128 (52 SE2d 461); and *Wilson v. Ingram*, 207 Ga. 271 (61 SE2d 126). For this same reason we are not concerned with Georgia statutes relating to descent and distribution or to adoption. In all other respects Georgia law controls. See *Sears v. Minchew*, 212 Ga. 417 (93 SE2d 746).

(b) But the parties disagree as to whether the Pennsylvania intestate law to be applied is that in force in 1916 when Mrs. Carnegie died and her will took effect or that in force in 1962 when her last surviving child died and the trust terminated. As to this question, the two natural sons contend that under Georgia law a will is to be construed by the law existing when, upon the testator's death, the will takes effect, and assert that therefore the intestate law of Pennsylvania as of 1916 must be used to identify the remaindermen. They refer to such cases as *Hertz v. Abrahams*, 110 Ga. 707 (2) (36 SE 409, 50 LRA 361); and *Wilson v. Ingram*, 207 Ga. 271 (2), supra. On the other hand, the adopted son maintains that under the Pennsylvania intestate law existing at the time of either event, the testatrix's will taking effect in 1916 or the trust terminating in 1962, he is a remainderman.

After consideration of this question, we have concluded that

the applicable intestate law of Pennsylvania is that which was of force when the trust terminated in 1962, and therefore it is not necessary to consider that which existed in 1916.

In reaching this conclusion we, of course, recognize the rule that a will is to be construed under the law in effect at the testator's death. But that is only one of the rules of construction and is applicable only where no expression on the subject was made by the testator. See 57 Am. Jur. 660, Wills, § 1021; 95 CJS 726, Wills, § 587. In construing this feature of this will we are governed by the most fundamental of all rules of construction, that which looks for the intent of the testator. "The intention of the testator should be the first and great object of inquiry . . ." (*Cook v. Weaver*, 12 Ga. 47); "In the construction of all legacies, the court shall seek diligently for the intention of the testator and give effect to the same as far as it may be consistent with the rules of law . . ." (*Code* § 113-806); and "The cardinal rule of construction is to ascertain the intention of the parties . . ." (*Code* § 20-702).

As we view it, Mrs. Carnegie's will gives a clear expression of her intent that the law to be applied to ascertain the remaindermen should be that of force when the trust terminated. She employed these words: "In the event the trust herein created for said Island property, or any portion thereof, has not terminated before the death of the last survivor of my said children . . . the said trust shall *then* terminate and the whole or any portion thereof remaining unsold *shall be vested, but not before,* absolutely in such persons and for such estates and proportions *as would take* the same under the intestate laws of the State of Pennsylvania *had* I died intestate possessed thereof, *and* all my named children *had* survived me and died intestate . . ." (Emphasis ours.)

Those words manifested her intent that this property be disposed of upon the happening of events which in all likelihood would transpire long after her death. Her formula for the disposition of Cumberland Island was thus based upon both fact and law—the composition of her family *and* the intestate law of Pennsylvania as both *would be* upon the death of her last surviving child. That child died in 1962. As for the *factual* basis for this disposition therefore being determined in 1962, all parties are in

agreement. But as to the *legal* basis for that disposition, the natural sons urge that the law in effect at the time of her death in 1916 governs. We gather no such incongruous distinction. Both facts and law are part and parcel of the same thing—her direction that, upon the death of her last surviving child, this property pass to those persons who would be entitled to it under the Pennsylvania intestate law of force *at that time.*

(c) Applying, then, the intestate law of Pennsylvania of force when the testatrix's last surviving child died on April 15, 1962, we find no dispute among the parties as to the result. The State of Pennsylvania's Intestate Act of 1947, of force in 1962, provides: "For the purposes of descent by, from and through an adopted person he shall be considered the issue of his adopting parent or parents and not the issue of his natural parents . . ." Act 1947, April 24, P. L. 80, § 8 (20 P. S. § 1.8). Pennsylvania courts construe the word "through" in their intestacy statutes to mean by representation. See In re Cave's Estate, 326 Pa. 358 (192 A 460).

(d) We find no merit in the contention that Mrs. Carnegie's will manifested an intent to include as remaindermen only those of Carnegie blood, so as to exclude one who has been adopted, even though he may be an heir under intestate laws.

No support for this contention is found in the words she chose to use. She broadly provided for vesting in *such persons* and for such estates and proportions as would take under the intestate laws. These words evidence no intent that the remaindermen be only those of Carnegie blood, but clearly indicate her indifference as to whether they are or not. In other portions of her will the bequests are to "my children" and "the children of such of my children as are then dead" and similar phrases denoting blood relationship, whereas the provision under consideration here merely says "such persons." Furthermore, in this provision she specifically excluded some of her own blood—the children of a named son. She also anticipated possible contingencies by excluding that son's wife and the husbands of any of her daughters. Had she so desired she could have also specifically excluded any adopted children. Before her death the Pennsylvania law (Act 1911, June 1, P. L. 539, § 3; Act 1915, May

28, P. L. 580, § 1) gave inheritance rights to adopted persons and this was presumably known to Mrs. Carnegie, but nowhere in her will did she proscribe against an adopted person.

We find no Georgia case involving a provision like the one here, but there is a Pennsylvania case (Johnson's Appeal, 88 Pa. 346) having a similar provision and dealing with the same contention urged here. Although we are not bound by that decision, its discussion of whether the testatrix intended only her blood relatives to take as remaindermen is, in our opinion, sound and is applicable here.

The will in that case created a trust for the testatrix's son during his life and at his death the corpus "to such person or persons, and for such estate or estates, and in such proportions as would, by the intestate laws of this Commonwealth, be entitled to the same, if he had died intestate seised thereof in fee." After the death of the testatrix the son adopted a child and subsequently died, leaving this adopted child but no natural children. The court there said: "In all this the intent of the testatrix is unmistakable: her main object is to provide for her son for life; this covers her principal anxiety, as will appear by the will itself. . . . After he is gone, her chief intent is fulfilled, and she casts the remainder over to the disposition of the intestate laws, to go not to any particular class, stalk or stirp, and not to her blood, near or remote, but to such *person* or *persons* as would, by the above-named laws, be entitled to the same. . . She [the child] is not, it is argued, of the blood of the testatrix, and therefore the testatrix did not intend to vest in her this remainder. But this is an imaginary intent, evolved for the occasion— one which Mrs. Johnson, if we regard her words, never entertained. She is careful to use no word by which the operation of the intestate laws might be limited; to such *person* or *persons* as would, by the intestate laws of this Commonwealth, be entitled to the same, had he died intestate seised thereof in fee, is her emphatic language, twice repeated in this same will. There is, therefore, nothing left for conjecture." Johnson's Appeal, 88 Pa. 346, 353.

Our conclusion is that the trial court, in the case at bar, properly ruled that Henry Carter Carnegie, the adopted son, is a remainderman under the provision of the will involved here.

592

■ Our final consideration is the quantity of Henry Carter Carnegie's interest in this trust property.

Mrs. Carnegie directed that upon the death of her last surviving child "the said trust shall then terminate and the whole or any portion thereof remaining unsold shall be vested, but not before, absolutely, in such persons . . ." Since the last surviving child of Mrs. Carnegie died in 1962, the trust estate vested at that time, in those persons who were *Mrs. Carnegie's* heirs at law under Pennsylvania intestate laws then of force. Therefore, Thomas Morrison Carnegie and his sons, Thomas Morrison Carnegie, Jr., and Carter Beggs Carnegie, being already deceased, were never vested with any interest which could pass to *their* heirs at law or devisees. The entire Thomas Morrison Carnegie branch's share goes to the *testatrix's* heirs at law of that branch—her great-grandsons, Henry Carter Carnegie, Thomas Morrison Carnegie, III, and Andrew Carnegie, III.

The trial court correctly decreed that Henry Carter Carnegie is entitled to one-half of that share, to wit, a one-tenth interest in the trust property; and likewise correctly decreed that Thomas Morrison Carnegie, III, and Andrew Carnegie, III, are entitled to the other one-half of the Thomas Morrison Carnegie branch's share, to wit, a one-twentieth interest each in the trust property. Act 1947, April 24, P. L. 80, § 3 (1) (20 P. S. § 1.3 (1)); Act 1957, July 10, P. L. 623, '§ 4 (20 P. S. § 1.4 (1) ).

*Judgment affirmed. All the Justices concur.*