## TANCRED et al. v. BREWER.

No. 8538—Opinion Filed May 27, 1919.

(Syllabus by the Court.)

**Pleading—Judgment on Demurrer.**

Where the amended petition of the plaintiffs states a cause of action against the de-

fendant in a representative capacity, and the defendant interposes a demurrer "that the facts set forth in said petition do not constitute a cause of action against this defendant," which is sustained by the court, and the plaintiffs elect to stand upon their amended petition and decline to further plead, and the court renders judgment that the plaintiffs take nothing and awards that the defendant recover his costs, held, the judgment must be reversed and the cause remanded for a new trial.

Error from District Court, Pittsburg County; R. W. Higgins, Judge.

Action by M. T. Tancred and W. L. Cox, copartners, doing business under the firm name and style of Tancred & Cox, against R. P. Brewer, as administrator of the estate of J. C. Wilson, deceased. Demurrer to amended petition sustained, and judgment against plaintiffs for costs, and they bring error. Reversed and remanded.

Frank G. Anderson, for plaintiffs in error.

William H. Scott, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Pittsburg county from a judgment of the court sustaining a demurrer of the defendant to the amended petition of the plaintiffs. The plaintiffs having elected to stand upon their demurrer, the court thereupon rendered judgment that the plaintiffs take nothing by reason of this action, and that the defendant have judgment against the said plaintiffs for costs, to which judgment the plaintiffs excepted, which exceptions were allowed by the court.

On August 12, 1916, the plaintiffs, who were plaintiffs below, filed their petition in error in this court against the defendant in error, who was defendant below, with a transcript of the record of the court below attached. This action was commenced by the plaintiffs on February 19, 1914. The amended petition of the plaintiffs was filed in the court below on the 22d day of April, 1916, which, omitting the caption, is as follows:

"Comes now the plaintiffs, M. T. Tancred and W. L. Cox, and for their cause of action against R. P. Brewer, as administrator of the estate of J. C. Wilson, deceased, allege and state:

"That the said M. T. Tancred and W. L. Cox, plaintiffs, are now and at all times hereinafter mentioned were, copartners and doing business under the firm name and style of Tancred & Cox. That upon the 22d day of July, 1913, the defendant, R. P. Brewer, was by the county court in and for Pittsburg county, state of Oklahoma, duly appointed administrator of the estate of one J. C. Wilson, deceased, and that ever since said date

the said R. P. Brewer has been and is now the duly appointed, qualified, and acting administrator of the estate of the said J. C. Wilson, deceased. That on or about the 6th day of July, 1913, the said J. C. Wilson died, in Pittsburg county, state of Oklahoma. That during the lifetime of the said J. C. Wilson, to wit, on or about the 14th day of February, 1913, the said firm of Tancred & Cox, made and entered into a verbal contract with the said J. C. Wilson, under and by virtue of the terms of which the said J. C. Wilson sold to said firm of Tancred & Cox four hundred and forty (440) head of cattle and three (3) cow ponies, all of said cattle being branded "bar W bar" (—W—), with the exception of about twenty or twenty-five head, which were unbranded, and that the said Tancred & Cox agreed to pay the said J. C. Wilson therefor the sum of $30.00 per head for two hundred and sixty (260) head of said cattle and the sum of $20.00 per head for one hundred and eighty head of said cattle, and the sum of $50.00 each for three ponies, and that said Tancred & Cox then and there paid to the said J. C. Wilson, the sum of $500.00 upon the purchase price of said cattle and cow ponies, and the said J. C. Wilson then and there agreed to deliver the cattle and cow ponies to the said Tancred & Cox during the spring and summer of 1913, at Canadian, Oklahoma, and the said Tancred & Cox agreed to pay to the said J. C. Wilson the balance of said purchase price as the said J. C. Wilson should deliver said cattle and ponies.

"That said J. C. Wilson, during his lifetime, in pursuance of the terms and conditions of said contract, did on or about the 21st day of February, 1913, deliver to said Tancred & Cox, at Canadian, Oklahoma, three hundred and twenty-four (324) head of said cattle, which delivery included the two hundred and sixty (260) head of said cattle, for which the said Tancred & Cox were to pay the sum of $30.00 per head, and sixty-four (64) head, for which the said Tancred & Cox were to pay the sum of $20.00 per head, and that upon the delivery of said cattle the said Tancred & Cox paid to the said J. C. Wilson the purchase price due for said cattle delivered, after deducting the sum of $500.00 paid to the said J. C. Wilson on the purchase price of said cattle at the time of the making of said contract, and that said J. C. Wilson thereafter during his lifetime, to wit, on or about the 13th day of March, 1913, delivered to said Tancred & Cox, at Canadian, Oklahoma, thirty-eight (38) head of the remainder of said cattle, for which the said Tancred & Cox were to pay the sum of $20.00 per head, and also delivered the said three cow ponies, and that upon said delivery the said Tancred & Cox paid to the said J. C. Wilson the purchase price of said cow ponies, to wit, the sum of $20.00 per head for said cattle and $50.00 per head for said cow ponies. That at the time of the death of the said J. C. Wilson, to wit, on or about the 6th day of July, 1913, there remained seventy-eight (78) head of said cattle to be

delivered by the said J. C. Wilson, in pursuance of the terms and conditions of said contract, which the said J. C. Wilson had not delivered to the said Tancred & Cox, for which the said Tancred & Cox were to pay the sum of $20.00 per head, and that said seventy-eight (78) head of cattle have never been delivered to said Tancred & Cox, although during the summer of 1913 said Tancred & Cox repeatedly demanded of the said defendant, R. P. Brewer, as the administrator of the estate of the said J. C. Wilson, that said R. P. Brewer, as such administrator, deliver to said Tancred & Cox said seventy-eight (78) head of cattle according to the terms and conditions of said contract, but that the said R. P. Brewer, as such administrator, disregarding said contract, has at all times refused to deliver said cattle to said Tancred & Cox, and disregarding said demands made by the said Tancred & Cox, for the delivery of said cattle, said R. P. Brewer, as the administrator of the estate of said J. C. Wilson, sold said cattle to parties other than said Tancred & Cox.

"Plaintiffs further state and allege that said seventy-eight (78) head of cattle purchased by the plaintiffs from said J. C. Wilson, which have not been delivered as hereinbefore stated, were of the reasonable value of $34.50 per head, making a total value of $2,691.00, and that the price agreed to be paid therefor by the said Tancred & Cox, was the sum of $20.00 per head, making a total of $1,560.00; therefore, by reason of said defendant's failure and refusal to carry out the terms and conditions of said contract and deliver said cattle in accordance therewith, said plaintiffs have been damaged in the sum of $1,131.00.

"Plaintiffs further state and allege that on the 14th day of August, 1913, said defendant as the administrator of the estate of the said J. C. Wilson, gave due notice by advertisement, as required by law, to the creditors of the said J. C. Wilson, deceased, to present to said administrator their claims against said estate within four months from the date thereof, or the same would be forever barred. That said plaintiffs duly presented to said administrator their said claim in writing, properly verified, for the said sum of $1,131.00 against said estate of said J. C. Wilson, on the 24th day of November, 1913, which claim was by the said administrator on said 24th day of November, 1913, disallowed. A copy of said claim as presented to said administrator is hereto attached, marked 'Exhibit A' and made a part thereof.

"Wherefore plaintiffs pray judgment against R. P. Brewer, as the administrator of the estate of said J. C. Wilson, deceased, for the sum of $1,131.00, together with interest thereon at the rate of 6 per cent. per annum from the 24th day of November, 1913, and a judgment allowing and establishing said claim as a valid claim against said estate, and that said administrator be ordered to pay said claim in the due course of the administration of said estate, and that plaintiffs recover costs of this action, and that they have all other general and proper relief."

On the 9th day of May, 1916, the defendant filed a demurrer to the plaintiffs' amended petition, which demurrer, omitting the formal parts, is as follows:

"Comes now the defendant and demurs to the first amended petition filed herein, and for reason shows: That the facts set forth in said petition did not constitute a cause of action against this defendant."

And on the 24th day of June, 1916, the court sustained the demurrer of the defendant, and the plaintiffs elected to stand upon their amended petition, and, declining to further plead, the court rendered the following judgment:

"It is therefore by the court considered, ordered, adjudged, and decreed that said demurrer of the defendant to the first amended petition of plaintiff be and the same is hereby sustained. To which action by the court, sustaining said demurrer, plaintiffs at the time excepted, which exception was by the court allowed."

On August 12, 1916, the plaintiffs filed their petition in error in this court with a transcript of the proceedings attached, marked "Exhibit A," which petition in error contained the following assignments of error:

(1) That said court erred in sustaining defendant's demurrer to plaintiffs' amended petition, to which the plaintiffs at the time excepted.

(2) That said court erred in rendering judgment against said plaintiffs in favor of said defendant upon said demurrer, to which plaintiffs excepted.

In disposing of this appeal, it will be only necessary to consider the plaintiffs' first assignment of error, as a determination of the question therein raised, will necessarily determine the question raised by the second assignment of error.

The defendant's demurrer challenged the sufficiency of the plaintiffs' amended petition. For the purpose of the demurrer of the defendant the allegations of the amended petition must be treated as true, then it necessarily follows that, if the amended petition of the plaintiffs stated a cause of action against the defendant, the trial court committed error in sustaining the demurrer, and such judgment must be reversed.

The plaintiffs allege in their amended petition: That the defendant was the duly appointed, qualified, and acting administrator of the estate of J. C. Wilson. That on February 14, 1913, the plaintiffs entered into a verbal agreement with the said intestate of

the defendant, by which they purchased from the defendant's intestate 440 head of cattle and three horses, and at the time paid to said intestate upon the purchase price of said property the sum of $500, such property to be delivered to the plaintiffs by the said intestate of the defendant during the spring and summer of 1913. That the said intestate of the defendant, in pursuance of said agreement, delivered to plaintiffs said three head of horses and all of the cattle except 78 head and that the plaintiffs paid for the live stock delivered upon the delivery of the same. That the defendant's intestate died on the 6th day of July, 1913, and that on said date 78 head of the cattle, for which plaintiffs had agreed to pay at the rate of $20 per head, had not been delivered. That said cattle were of the reasonable value of $2,691, and that the said sum agreed to be paid therefor was $1,560, and the failure to deliver the same caused a damage to the plaintiffs in the sum of $1,131. That on the 22d day of July, 1913, the defendant was duly appointed by the county court of Pittsburg county, Okla., administrator of the estate of J. C. Wilson, deceased, and has ever since said date been so acting. That thereafter the plaintiffs had requested said defendant, as administrator, to deliver to the plaintiffs the 78 head of cattle during the summer of 1913, according to the terms and conditions of said contract, but that the defendant refused to do so, and in disregard of the terms and conditions of said contract, and the plaintiffs' demand, sold said cattle to purchasers other than the plaintiffs, and that the plaintiffs have at all times since the making of said contract been ready, able, and willing to pay for said cattle according to the terms and conditions of such contract, and in all respects complied with the terms thereof on their part, and that said 78 head of cattle were reasonably worth $34.50 per head at the time the delivery thereof was refused by the defendant, and that on the 14th day of August, 1913, the defendant, as administrator of the estate of his said intestate, gave notice to creditors to present their claims, and that on the 24th day of November, 1913, and within the time allowed for presentation of claims against said estate, the plaintiffs presented their claim to the defendant as such administrator, and the same was by him disallowed, and that this suit was commenced on the 19th day of February, 1914, within time allowed by law for the bringing of actions upon claims disallowed by the administrator of said estate, in the district court of Pittsburg county, Okla.

As before stated, the question here presented is: Did the facts alleged in such amended petition constitute a cause of action, sufficient when challenged by the demurrer of the defendant? Rev. Laws 1910, sec. 6302, provides:

"Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases and in the same courts in which the same might have been maintained by or against their respective testators and intestates."

This court. in the case of Kaufman v. Boismier, Adm'r, 25 Okla. 252, 105 Pac. 326, construing section 1692, Wilson's Rev. & Ann. St. 1903, which is the statute under consideration, said:

"The administrator, however, is the real party to the action, * * * and verifies the pleadings as such party, and not as agent of the intestate"—citing Wilson v. Me-ne-chas, 40 Kan. 648, 20 Pac. 468.

Rev. Laws 1910, sec. 6336, provides:

"Every executor or administrator must immediately after his appointment, give notice to the creditors of the decedent, requiring all persons having claims against said decedent to present the same. * * * Such notice shall be substantially in the following form:

"All persons having claims against A. B., deceased, are required to present the same with the necessary vouchers, to the undersigned administrator, at ———, within four months of the date hereof, or the same will be forever barred.    A. B., Administrator.

"Dated ———, 19—."

Rev. Laws 1910, sec. 6338, provides:

"All claims arising upon contracts hereafter made, whether the same be due, not due or contingent, must be presented within the time limited in the notice; and any claim not so presented is barred forever."

Exhibit A, to the plaintiffs' amended petition with indorsements thereon, is as follows:

"Rec, 11—24—13

"Dis. All. do.

"State of Oklahoma, Pittsburg County—ss.:
"In the County Court.

"In the Matter of the Estate of J. C. Wilson, Deceased, R. P. Brewer, Administrator, in Account with Tancred & Cox.

"M. T. Tancred and W. L. Cox, partners doing business as Tancred & Cox, hereby submit the following claim against the estate of J. C. Wilson to R. P. Brewer, administrator of said estate, and found said claim on the following facts and figures, to wit:

"That on or about the 14th day of February, 1913, the deceased, J. C. Wilson, then living, entered into a contract with Tancred & Cox, whereby the said J. C. Wilson sold to Tancred & Cox all of his cattle of the

—W— brand, on left side, the number of cattle to be sold being founded on the book account of the said J. C. Wilson, which account at that time was 440 head of cattle. That all of said cattle were to be delivered to the said Tancred & Cox at Canadian, Oklahoma. That Tancred & Cox were to pay for the cattle as follows: $30.00 per head for 260 of said cattle when delivered as above, and $20.00 for the balance when delivered as stated above.

"That the said J. C. Wilson delivered the 260 and received therefor the agreed amount, viz. $30.00 per head. That he delivered 102 of the said cattle at the price of $20.00 per head. That at the time of the death of the said J. C. Wilson there remained to be delivered under the said contract 78 of the said cattle at the price of $20.00 per head. That since the death of the said J. C. Wilson Tancred & Cox have demanded that the administrator deliver them the cattle according to the contract mentioned above, but that the said administrator refused so to do, but sold the said cattle to another person than the said Tancred & Cox. That by reason of the said action for the administrator there is due to Tancred & Cox, out of the estate of J. C. Wilson, the sum of $1,131.00, as follows:

Value of 78 cattle at $34.50 per head__$2,691.00
Value of 78 cattle at $20.00 per head__ 1,560.00
                                        _____
    Due Tancred & Cox_____$1,131.00

"That said cattle were reasonably worth the price of $34.50 per head on or about the 1st day of March, 1913, at the date of the sale of said cattle.    Tancred & Cox, by Mc.

"State of Oklahoma, Pittsburg County—ss.:
"M. T. Tancred, being duly sworn, on oath says that the within claim against the estate of J. C. Wilson, deceased, amounting to the sum of $1,131.00, is just, after allowing all just credits and offsets, and is now due and unpaid.

"Subscribed and sworn to before me this 22d day of November, 1913.    Clark Nichols.
"My commission expires Feb. 7th, 1917."

It will be observed that the plaintiffs allege in their amended petition that the defendant's notice to creditors was dated August 14, 1913, and that the plaintiffs duly presented their claim to the defendant, as administrator of the estate of his intestate, on November 24, 1913, which was within four months from the date of said notice. Rev. Laws 1910, sec. 5279, provides:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

This section was borrowed from Kansas (Gen. St. Kan. sec. 4615), and was construed by this court in Kas. City, M. & O. R. Co. v. Shutt, 24 Okla. 96, 104 Pac. 51, 138 Am. St. Rep. 870, 20 Ann. Cas. 255. Syl. par. 1 of the opinion is as follows:

"A cause of action in favor of the owner of personalty, against a party wrongfully taking and converting the same to his use, is assignable."

And by the Supreme Court of Kansas in Watson, Stewart et al. v. Balderson et al., 10 Kan. 131, syl. par. 1:

"A claim for money tortiously obtained from the claimant may be assigned to a third person, so as to give the assignee a right to recover the same in his own name."

Section 6302, supra, was borrowed from California, and is Code Civ. Proc. Cal. sec. 1581, and was construed by the Supreme Court of California, in the case of Janin v. Browne, 59 Cal. 44, wherein it was said:

" 'Where the contract of the deceased is of an executory nature, and the personal representative can fairly and sufficiently execute all the deceased could have done, he may do so and enforce the contract.' Pars. Cont. 131. E converso, the personal representative is bound to complete such a contract, and, if he does not, may be made to pay damages out of the assets. Siboni v. Kirkman, 1 Mees. & W. 418."

And the court also quotes with approval from 1 Chitty on Contracts (11th Am. Ed.) at page 138, as follows:

"It is a presumption of law that the parties to a contract bind, not only themselves, but their personal representatives, and executors, therefore, are held to be liable on all contracts of the testator which are broken in his lifetime, and, with the exception of contracts in which personal skill or taste is required, on all such contracts broken after his death; and such parties may likewise sue on a contract, although they are not named therein."

" ' "Where the contract of the deceased is of an executory nature, and the personal representative can fairly and sufficiently execute all the deceased could have done, he may do so and enforce the contract." Parsons on Cont. 131. E converso, the personal representative is bound to complete such a contract, and, if he does not, may be made to pay damages out of the assets. Siboni v. Kirkman, 1 Mees. & W. 418.' But where an executory contract is of a strictly personal nature, the death of a party by whom the work is to be done before its completion determines the contract—unless what remains to be executed can certainly be done to the same purpose by another. Parsons on Cont. 131. Even if it be admitted that the contract we are considering was personal—and involved the placing by the plaintiff of peculiar confidence in the skill and judgment

of Browne, in so far as it authorized him to superintend the building of the house—the house was completed before the death of Browne. What remained to be executed—the sale of the property—could be done as well by the administrator as by Browne, had he lived."

In view of the record and the authorities cited, we hold that the trial court erred in sustaining the demurrer of the defendant to the amended petition of the plaintiffs, and therefore this case is reversed and remanded, with directions that the court proceed with the same in accordance with the views herein expressed.

All the Justices concur, except HIGGINS, J., disqualified, not participating.