FRANKLIN et al. v. MARGAY OIL
CORP. et al.

No. 31861. Nov. 21, 1944.

*153 P. 2d 486.*

T. R. Benedum, of Norman, for plaintiffs in error.

Cantrell, Carey & McCloud and O. A. Cargill, all of Oklahoma City, for defendants in error.

RILEY, J. This is an action commenced in the district court of Cleveland county by Margay Oil Corporation against E. V. Dennis and Ella Stanley Holliday, trustees of the estate of J. R. Holliday, deceased, Ella Stanley Holliday, individually, Vivian Ada Franklin, Prentiss O. Franklin, her husband, Vera Ellen Franklin, a minor, and the unknown and unborn issue of Vivian Ada Franklin. The action is to quiet title to two oil and gas leases and determine the validity, effect, continuity, and duration of said oil and gas leases owned by Margay Oil Corporation covering 54.60 acres of land in Cleveland county, Okla. One of the leases, dated June 8, 1943, was executed by E. V. Dennis and Ella Stanley Holliday as the trustees of the estate of J. R. Holliday, deceased, under a trust created by the will of said J. R. Holliday, to C. C. Guyer and assigned by him to Margay Oil Corporation. The other lease, dated the same day, covering the same land to the same lessee, was executed by Vivian Ada Franklin and Ella Stanley Holliday, the daughter and widow, respectively, of J. R. Holliday, deceased. That lease was also assigned to Margay Oil Corporation. Prentice O. Franklin is the husband of Vivian Ada Franklin. Vera Ellen Franklin is the daughter and only child of Vivian Ada Franklin. The oil and gas leases are the usual Producers 88 form containing the now customary "regulation clause". They run for five years from their date and as long thereafter as oil or gas, or either of them, are produced from the land, and provide the usual and customary one-eighth royalty. The tract of land covered by the lease is:

"West 54.60 acres of the Northwest Quarter (NW¼) Section 28, Township, 10 N., Range 3 W. and containing 54.60 acres, more or less."

J. R. Holliday died testate on or about the 7th day of August, 1941. At the time of his death, he was a resident of Oklahoma county, Okla. His will was duly admitted to probate in said county.

Insofar as is material here, the will provides:

"I hereby give, devise and bequeath all of my property, real and personal of every kind and wherever situated, whether vested or contingent at the time of my death unto my executors and trustees, hereinafter named and to their heirs and assigns, forever.

"In trust, nevertheless, as follows:

"I direct that my wife, Ella Stanley Holliday during her lifetime shall have the use of a home, together with the proper furnishings therefor from my estate.

"I further will and direct that all the rest, residue and remainder of my property shall be consolidated into a permanent fund to be safely and conservatively invested in bonds secured by mortgage upon real estate, or in such other first-class securities as to my executors and trustees may seem best; and such investments are to be made so as to yield a regular interest and income which shall be paid out, expended, and divided by my said executors and trustees as heinafter more particularly set forth. I hereby also authorize and empower my said executors and trustees, or the survivor or successor of them to hypothecate, bargain, sell and dispose of any lands, tenements, or property, real or personal, whereof I may be seized at the time of my death, or which they may be possessed as my executors and trustees, and upon any such sale thereof to execute, acknowledge and deliver all necessary and proper deeds or instruments of conveyance in the law for the vesting in the purchaser or purchasers the title thereof in fee. And I also authorize and empower my said executors and trustees from time to time, in their discretion, to receive or call for the payment of, and to sell and deliver and to make any necessary assignments or transfers of any and all of the property or securities in or upon which the said money or fund, or any part thereof, shall be invested, and the same again to reinvest or convert into other securities.

"I further direct that all the profits, interest and income of the said fund and property, as the same shall be received by my said executors and trustees, after deducting their expenses, commissions and disbursements, shall during the life of my wife, Ella Stan-

ley Holliday, be paid by my executors and trustees to my said wife, Ella Stanley Holliday, and I further direct that if in the discretion of my said executors and trustees such income is not sufficient for the support of my wife that they give to her from the principal of my estate such sums as they deem necessary; upon the death of my wife, Ella Stanley Holliday or upon my own death if I shall survive my wife, I direct that all the profits, interest and income of said fund and property as the same shall be received by my said executors and trustees shall, during the life of my daughter, Vivian Ada Franklin, be paid by my executors and trustees to my said daughter Vivian Ada Franklin, with discretionary power in my said executors and trustees to give to my said daughter, Vivian Ada Franklin, from the principal of my said estate all or any part they deem expedient. .

"I further direct that at the death of my daughter, Vivian Ada Franklin, the remainder of my estate, if any there be, go to the issue of my daughter, Vivian Ada Franklin.

" . . .

"I hereby nominate, designate and appoint my •wife. Ella Stanley Holliday and E. V. Dennis as executors and trustees of this my Last Will and Testament; stipulating that the said executors and trustees qualify and serve without giving bond or security whatsoever."

Final decree of distribution was entered in the county court of Oklahoma county distributing the land involved, together with other land, to Ella Stanley Holliday and E. V. Dennis, as trustees, in trust, however, as provided in the will, setting out substantially the trust provisions of the will.

The petition of plaintiff, Margay Oil Corporation, hereinafter referred to as Margay, contains two causes of action. The first cause of action is to quiet title to the oil, gas, and mineral rights purporting to be granted by said leases. The petition alleges the appointment and qualification of E. V. Dennis and Ella Stanley Holliday as the trustees of the estate of J. R. Holliday, deceased; that

522

the individual defendant Ella Stanley Holliday is the widow of said deceased and one of the beneficiaries named in the will; that defendant Vivian Ada Franklin is the daughter of J. R. Holliday, deceased, and also is one of the principal beneficiaries under the will, and that defendant Prentiss O. Franklin is her husband; that defendant Vera Ellen Franklin is the minor daughter of Vivian Ada Franklin and is a member of and representative of the class referred to in the petition and will as "the issue of Vivian Ada Franklin." Petition further alleges that the defendants above named except Vivian Ada Franklin and Vera Ellen Franklin and Prentiss O. Franklin are residents of the State of Oklahoma, and that the three defendants last named are non-residents of said state and that they and the unknown and unborn issue of Vivian Ada Franklin may be served by publication as provided by law. The petition then alleges present possession of the premises for oil, gas, and mineral purposes under the leases mentioned. Copies of the leases and assignments thereof are attached to and made a part of the petition. The petition further alleges that the land involved was owned in fee simple by J. R. Holliday, now deceased, at the time of his death and that the claims of defendants adverse to the rights, title, and ownership of the leasehold and possession of plaintiff grow out of and flow from the ownership of said land by J. R. Holliday, his death, the will and final decree of distribution in the county court of Oklahoma county. Copy of the will and final decree of distribution are attached to the petition and made a part thereof. It then alleges that defendants and each of them claim some right, title, interest, estate, or equity in and to the land, adverse to plaintiff and its ownership, leasehold, title, interest, and possession, which claims constitute a cloud on the title and ownership of plaintiff and its right of possession and that such claims are invalid and without justification in law or equity, and are therefore inferior to and subject to the prior rights

of plaintiff. The petition then alleges that after appropriate service of process, the court should appoint a guardian ad litem, or guardians ad litem as the circumstances may require, for the minor defendant, Vera Ellen Franklin, and for each and all unborn and unknown issue of Vivian Ada Franklin who are or may be minors, and should also appoint a trustee for all the issue of Vivian Ada Franklin, known and unknown and unborn, to represent their interest in the action.

The petition, in the second cause of action, after adopting by reference the allegations contained in the first cause of action, alleges that plaintiff is entitled to decree determining the meaning and intent of, and construing and decreeing the legal effect of the will and final decree of distribution, and particularly as to the interest, if any, of the issue of Vivian Ada Franklin, including specifically that of defendant Vera Ellen Franklin as well as those of the class of which she is a member and represents, being all the issue of Vivian Ada Franklin, known, unknown, and unborn; that if it be determined that the members of said class, including unknown members and members as yet unborn, have, at law or in equity, any right, title, interest, or estate, present, future, contingent, or remote, their exact interest should be determined and decreed herein and the trustees appointed in this case for them be directed to join in the oil and gas leases; that the appointment of a trustee for the members of the class composed of the issue of Vivian Ada Franklin is necessary and essential for the preservation of the property of the estate of J. R. Holliday, deceased, in the hands of his trustees so that said property may be used to the fullest advantage and that the oil and gas leasehold interest and estate of plaintiff might be preserved and protected and thereby prevent loss which would otherwise be suffered by those interested in the property belonging to the estate.

Prayer was for a decree construing

the will in accordance with the facts stated and for the appointment of such trustee and authorizing and directing such trustee to join in the execution of the oil and gas leases to plaintiff, upon such terms and conditions as a court of equity may rightfully impose.

Summons was issued and served on the resident defendants and was returned showing the nonresident defendants not found. Affidavit for service of summons by publication on defendants Vivian Ada Franklin, Prentiss O. Franklin, and Vera Ellen Franklin was filed. Summons by publication was issued and published. It is conceded that the service of summons by publication was duly and regularly made and no question is raised as to the sufficiency.

At the proper time, on application of plaintiff, the court entered an order appointing T. R. Benedum guardian ad litem in this cause to appear for and represent the minor defendant Vera Ellen Franklin individually and as representative of the class to which she is a member and to appear for and represent each, every, and all of the issue of Vivian Ada Franklin known and unknown who are or may be minors. At the same time plaintiff made application for the appointment of a trustee for all of the issue of Vivian Ada Franklin known, unknown and unborn, to represent in this cause whatever interest in the land the issue of Vivian Ada Franklin may have. The court first declined to appoint a trustee for that purpose. Later the court reconsidered and appointed T. R. Benedum as such trustee.

Defendants E. V. Dennis and Ella Stanley Holliday, trustees, filed their answer to the petition, alleging substantially the same state of facts as alleged in the petition as to the ownership of the property, the provisions of the will, and their appointment as trustees, the execution of the oil and gas lease by them as trustees. They further alleged that under the terms of the will the duty devolved upon them to handle said property to the best interest of not only those entitled to the income therefrom during their lives, but also the interests of the remaindermen; that under existing conditions in and around said property, to protect the interest of all concerned, the property must be leased for oil and gas so that wells may be drilled thereon to protect the property from drainage by offset wells and that under all the circumstances, the leases are good and valid leases and binding upon the beneficial interests of the holders of the trust as well as the known and unknown remaindermen.

Their prayer was for a decree construing the terms and provisions of the will accordingly and for all proper and equitable relief.

January 28, 1944, 43 days after answer day for the trustees and one day before the answer day for defendants Vivian Ada Franklin, Prentiss O. Franklin, and Vera Ellen Franklin, a minor, as fixed by the summons by publication, H. F. Westcott was, by order of court, and stated to be by agreement of the parties, permitted to intervene and was given one day in which to file petition in intervention. January 29, 1944, Wescott filed his petition in intervention. Therein he alleged that J. R. Holliday, at the time of his death, was the owner of all the northwest quarter of section 28, township 10 north, range 3 W. I. M. He then pleaded the will of J. R. Holliday, deceased, its terms and conditions, the probate thereof and the final decree of distribution, substantially the same as the petition of Margay, attaching a copy of the will and decree of distribution. He then alleged that acting under and by virtue of the authority of the trustees under the will, said trustees executed and delivered to intervener an oil and gas lease covering the east 105.40 acres of said quarter section of land. Copy of the oil and gas lease was attached to the petition. The lease was dated November 3, 1943. It is 99 Producers' form, which is substantially the same as Producers' 88 form except it contains what is known as the "pool-

ing clause." It runs for a term of ten years from its date and as long thereafter as oil and gas, or either of them, is produced from said land by the lessee and provides for 1/8 royalty.

The petition in intervention and the relief sought are substantially the same with respect to the land covered by intervener's lease as the first cause of action in Margay's petition as to the land covered by its leases. The ultimate relief sought is that the intervener's title to the oil, gas, and mineral rights under said land be quieted in intervener.

The defendant trustees, under the will, filed their answer to the petition in intervention substantially the same as their answer to the petition of Margay. Therein they prayed for a decree construing the terms and provisions of the will of J. R. Holliday.

T. R. Benedum, as guardian ad litem for Vera Ellen Franklin, a minor, invidually, and as representative of the class of which she is a member, filed an answer to the petition of Margay. Therein he denies generally and specifically the allegations of the petitions. He also alleges:

"That the minor, Vera Ellen Franklin, and the class which she represents by virtue of the terms of the will of J. R. Holliday, deceased, have an interest in the estate of the said J. R. Holliday, deceased, as remaindermen, and that the terms and provisions of the will and the final decree distributing said estate should be construed and the interests of these parties determined."

A like answer was filed to the petition in intervention. Later, said answers were adopted as the answers of Benedum as trustee for all the unknown and unborn issue of Vivian Ada Franklin.

William M. Franklin, as guardian of the estate of Vera Ellen Franklin, by leave of court, intervened. He alleged that Vera Ellen Franklin and the class she represents by virtue of the terms of the will have an interest in the estate of J. R. Holliday, deceased, as remain-dermen and that the will should be construed and the interest of said parties determined.

Ella Stanley Holliday, individually, Vivian Ada Franklin, and Prentiss O. Franklin did not appear.

Trial was to the court. The documentary evidence shows title to the land in J. R. Holliday, the will, the admission thereof to probate, the final decree of distribution, and the execution of the leases relied upon.

The uncontradicted oral evidence shows that the land is located in a district being developed for oil and gas and is in a potential oil field. The evidence further shows that Margay and Westcott desire to develop their leases for oil and gas; that sinking wells in that vicinity is expensive and that a prudent producer would not likely incur the risk with a probable defect in his title. One producing well has been drilled in the vicinity; development around the property would probably cause loss by drainage unless the property be developed.

The court found that all the material allegations in the petition of Margay and that of interveners are true and that the plaintiff and intervener, respectively, are entitled to judgment and decree as prayed for. The court found further that the last will and testament of J. R. Holliday, deceased, and the decree of distribution should be interpreted and construed so as to fix the fee-simple title in and to the land involved in Ella Stanley Holliday and E. V. Dennis, trustees, with full and legal power, right, and authority to execute and deliver oil and gas leases and conveyances of mineral rights therein and thereunder. The court found that the oil and gas leases owned and held by Margay and intervener, respectively, are good and valid oil and gas leases duly and properly executed by the trustees under good, valid, and sufficient legal authority therefor, and that the respective titles and right of ownership and possession should be

quieted as against E. V. Dennis and Ella Stanley Holliday, trustees of the estate of J. R. Holliday, deceased, Ella Stanley Holliday individually, Vivian Ada Franklin, Vera Ellen Franklin, a minor in her individual capacity and as representative of the class to which she belongs, and the unknown and unborn issue of Vivian Ada Franklin, and William M. Franklin, guardian of Vera Ellen Franklin, a minor, and any and all other persons holding under them or either of them. The case was dismissed without prejudice as to defendant Prentiss O. Franklin on a showing that he was in the military service of the United States. Later he filed acceptance of and acquiescence in the judgment and decree.

The court, in quieting the title of Margay and intervener, specifically stated:

"In this connection, it is hereby determined and decreed that by the last will and testament of J. R. Holliday, deceased, and the decree of the County Court of Oklahoma County, Oklahoma, distributing the estate of said J. R. Holliday, deceased, the trustees named therein, Ella Stanley Holliday and E. V. Dennis, were invested with and accorded the legal right, power, and authority to execute and deliver the oil and gas leases asserted herein by the plaintiff and by the intervener."

Vera Ellen Franklin, a minor, individually and as representative of the class to which she belongs, by T. R. Benedum, her guardian ad litem, and T. R. Benedum, trustee for all the unknown and unborn issue of Vivian Ada Franklin, and the unknown and unborn issue of Vivian Ada Franklin, by T. R. Benedum, trustee, appeal.

There are sixteen assignments of error presented under ten propositions in the form of questions. The first: Is the ultimate conclusion reached by the trial court correct? That question can be answered only after consideration of the nine other questions presented.

It is first suggested that an action cannot be maintained to quiet title to an oil and gas lease. In this conection,

plaintiffs in error cite Kolachny v. Galbreath et al., 26 Okla. 772, 110 P. 902, and rely upon paragraph 4 of the syllabus which holds:

"4. Oil and gas, while in the earth, unlike solid minerals are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of the oil that is in the ground, but of such a part as the grantee may find, and passes nothing that can be the subject of an ejectment or other real action."

This is not an action to quiet title to the oil and gas in place in and under the land, distinct from the land itself. It is an action to quiet title to the leasehold rights granted, i.e., the right to explore for and take from the land such oil and gas, or either, as may be found. Therefore, the title to the oil and gas in place, distinct from the land itself, is not here involved.

The next case cited is First National Bank of Healdton v. Dunlap et al., 122 Okla. 288, 254 P. 729. That case holds that an oil and gas lease which grants, leases, and lets certain land for oil and gas mining purposes "conveys to the lessee an estate in the realty described," but that such interest is not real estate within the meaning of the statute which gives a judgment creditor a lien upon the "real estate belonging to the judgment debtor." This is not an action to enforce a judgment lien against realty owned by a judgment debtor. Therefore, the latter part of said holding has no application.

Mitchell v. Probst, 52 Okla. 10, 152 P. 597, is cited. That case holds that where an oil and gas lease provides that if an oil well is not drilled on the premises within a given time, the lease agreement shall become null and void unless lessee shall, within the time stated, pay a given sum as rental and thereby extend the lease agreement, amounts to an option and gives the lessor the right to cancel if the conditions are not complied with. That issue is not involved in this case. Mitchell v. Probst, supra, also holds that an oil and gas lease granting the right to ex-

plore for oil and gas is more like a license than an estate in land. But, as we shall later show, that is not now the rule in this state. In Rich v. Doneghey et al., 71 Okla. 204, 177 P. 86, cited by plaintiffs in error, construing an oil and gas lease similar to the ones here involved, this court said:

"Bearing these principles in mind, it will at once be seen that by this instrument the plaintiffs granted to the defendant a present vested interest in their land."

In a long line of cases, this court has held that an oil and gas lease of the kind here involved vests in the lessee an interest in the land. Barnes v. Keys, 36 Okla. 6, 127 P. 261; Rich v. Doneghey, supra; Nicholson Corporation v. Ferguson, 114 Okla. 16, 243 P. 195; Cuff v. Koslosky, 165 Okla. 135, 25 P. 2d 290. In the latter case, it is said:

"This court, in the case of Brennan v. Hunter, 68 Okla. 112, 172 P. 49, announced the following rule relative to oil and gas leases:

" 'The lessees thereby acquired a vested, though limited, estate in the lands for the purpose named in the lease, and are entitled to be protected in the exercise of their rights according to the terms and conditions of the contract. . . . The views above expressed are sustained by the great weight of authority, if not by the unanimous opinions of the courts.' "

There can now be no doubt that the oil and gas leases involved convey such interest in real estate that an action may be maintained to quiet the title.

It is next suggested that Margay may not maintain its suit in equity to construe the will. It is pointed out that at the time of the death of J. R. Holliday there was no Oklahoma statute specifically authorizing an action for that purpose. However, S. L. 1941, Title 60, ch. 4, on Uses and Trusts, p. 250, by sec. 23, p. 255 (Title 60 § 175.23, O.S. 1941), effective about 14 days after the death of testator herein, provides that the district court shall have jurisdiction to construe the provisions of any trust in-

strument and all such actions are declared to be proceedings in rem.

It is admitted that this court has held that a will may be construed by a court of equity when construction is incidental to other relief sought. Courtney v. Daniel, 124 Okla. 46, 253 P. 990. It is there held:

"In an action in the district court in partition and within the rule last above, attacking an order of the county court purporting to construe a will which is admitted to probate, the district court has the incidental jurisdiction to construe the will and determine the rights of pretermitted children."

In Lewis v. McConchie, 151 Kan. 778, 100 P. 2d 752, it is held:

"A court of equity has jurisdiction and inherent power, based upon consideration of necessity and expediency, to appoint a trustee for unknown or unborn contingent devisees or interest holders under a will, and to construe the will and determine their possible rights."

In Haugh v. Bokern et al., 325 Mo. 1143, 30 S.W. 2d 47, it is held that generally a court of equity will not entertain jurisdiction of a suit brought for the sole purpose of construing a will without seeking other relief.

Clark v. Carter, 200 Mo. 515, 98 S.W. 594, cited by plaintiffs in error, is a case where, as here, plaintiff Clark purchased land and received a deed from the executrix of her husband's will. Thereafter, her authority to sell the land was questioned, whereupon Clark brought suit in a court of equity for construction of the will. It was held that the will might be introduced in evidence to show power or want of power to make the conveyance, and that the court, as an incident in the trial, might construe the will.

In Hill v. Hill, 49 Okla. 424, 152 P. 1122, it is held:

"Any person having any interest in the trust or the trust property has a right to insist, in proper proceeding, that the trust shall be maintained and

executed according to the wishes of the settlor, as expressed by the terms of the trust."

The rule is:

"The regulation and enforcement of trusts is one of the original and inherent powers of a court of equity, and with the exception of such as are given to other courts, the jurisdiction of equity in all cases of trusts, express or implied, resulting or constructive, is unquestioned, especially where matters of account are involved." 21 C.J. 116.

Such action may be maintained by any person having an interest in the subject matter such as to give him the right to relief. 30 C.J.S. 587.

It is next suggested that the venue of the action was not properly laid in Cleveland county. It is conceded, however, that if the action of plaintiff to quiet title is proper, there is no question but that the venue was properly laid in said county. We have held that the leases in question convey an interest in real property. Actions for the recovery of real property, or any estate or interest therein, or the determination in any form of any such right or interest, must be brought in the county in which the subject of the action is situated. 12 O. S. 1941 § 131. So far as the cause of action of Margay and that of intervener to quiet title is concerned, the venue in Cleveland county is not only permissible but is mandatory and exclusive. That question is conclusively settled in Sinclair Prairie Oil Co. v. District Court, Oklahoma County, 180 Okla. 455, 70 P. 2d 94. As to the cause of action to construe the will, if there is really a separate cause of action for that purpose in this case, the matter of venue is a question which may be waived and as to the parties sui juris was waived by failure to object in apt time. Hume v. Cragin, 61 Okla. 219, 160 P. 621.

If venue is laid in the wrong county, the court having general power to take cognizance of the subject matter is not deprived of jurisdiction and may render judgment binding on the parties provided defendant does not object or make application in apt time to change the venue to the proper county. 67 C.J. 91.

Objection to the venue is usually held waived by failure to object and filing cross-bills asking affirmative relief. 67 C.J. 93. All the defendants in the trial court filed answers seeking construction of the will and thereby waived the question of venue as to that relief, if it is possible for a guardian ad litem for a minor defendant to waive the question of venue.

It may be noted that although a guardian ad litem cannot waive or admit away any substantial rights of the infant or consent to anything which may be prejudicial to him, the guardian ad litem may make a valid consent or waiver as to matters which facilitate a trial which cannot prejudicially affect the rights of the infant. 31 C.J. 1143. In Kingsbury v. Buckner, 134 U. S. 650, 33 L.Ed. 1047, it is held:

"The rule that a next friend or guardian ad lite mcannot, by admissions or stipulations, surrender the rights of the infant does not prevent a guardian ad litem or prochein ami from assenting to such arrangements as will facilitate the determination of the case in which the rights of the infant are involved."

And:

"A consent by the next friend or guardian ad litem that a case may be heard in a particular division of the Supreme Court of Illinois did not prejudice the substantial rights of the infant, although in the absence of consent, the Supreme Court, sitting in one division, cannot take cognizance of a case from another division."

It is also there held that the waiver by a guardian ad litem of a bond by the opposing party, on appeal, did not affect the jurisdiction of the court.

In Lemmon v. Herbert, 92 Va. 653, 24 S. E. 249, it was held that a guardian ad litem may consent, for the ward, to the removal of a suit affecting title to real property, from the circuit court in which the land was located, to another circuit court.

In this case, it appears that an early decision as to the rights of all parties concerned is highly desirable in order that the land may be developed for oil and gas and thereby avoid loss by drainage by the development of adjacent land. It does not appear that the rights of the infant defendants and the unknown and unborn issue of Vivian Ada Franklin could in any way be prejudiced by the trial of the questions in the district court of C l e v e l a n d county. In fact, prejudice might possibly result by requiring separate suit to be brought in Oklahoma county for construction of the will and await decision there and possible appeal to the Supreme Court, before trial of the issue of title in the case brought in Cleveland county. It is clear that the matter of venue in this particular case is one in which the guardian ad litem could and did waive, if in fact there is a cause of action to construe the will separate and distinct from the cause of action to quiet title.

It is next suggested that service of summons by publication in this case was not proper.

We have held that Margay had the right to bring and maintain the action to quiet title in Cleveland county where the land is located, and that the district court of that county had power to construe the will as an incident to the action to quiet title. Action to quiet title to real property or any interest therein is recognized everywhere as an action in rem. Proceedings to construe a will insofar as it affects title to real property is likewise an action in rem. An action to construe the provisions of any trust instrument is declared to be proceedings in rem by subdivision A, sec. 175.23, 60 O.S. 1941. Service by publication on any nonresident defendant may be made in all actions in rem. Therefore, service by publication in this case was proper and valid.

The next question presented is whether the decree in favor of Westcott is proper where no new summons was issued and served upon or after the filing of his petition in intervention.

Thereunder it is suggested that the intervener broadened the issues by extending the scope of inquiry to additional land, and that this could not properly be done by intervention. Vinson v. Washington Gas Light Company, 88 L.Ed. 646, is cited, wherein it is held that one of the most usual procedural rules is that an intervener is admitted to the proceeding as it stands, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding. No new issue of law or fact was contained in the plea of intervention. Nothing new was presented except the addition of other land held by the trustees under the same trust provisions of the will. There was no such broadening of the issues as to preclude the intervention on the ground stated. In intervention there are two classes. One in which intervention is not indispensable to the presentation or enforcement of the claim of petitioners. There permission to intervene is in the discretion of the court. If granted, petitioner's rights may then be preserved. If denied, he may assert his claim in a separate action. There is another class in which the petitioner claims a lien or interest in the specific property involved and within the exclusive jurisdiction of the court in which the action is pending, and his lien or interest therein can be established, preserved, or enforced in no other way than by the determination and action of that court. There the petitioner has absolute right to intervene. Swift v. Black Panther Oil & Gas Co., 244 Fed. 20, cited with approval in Morton v. Baker, 183 Okla. 406, 82 P. 2d 998. Westcott's claim falls within the first class. In White v. McGee, 149 Okla. 65, 299 P. 222, it is held:

"Any person may be permitted to intervene in an action where they have or claim an interest in the controversy, and where their substantial rights are in litigation.

"A district court, acting upon principles of manifest justice, may, in cases not provided for by the Code of Civil Procedure, permit one not a party to the suit to intervene, either before or after judgment, for the protection or

advancement or some right, with reference to the subject matter of the litigation which he holds." Sizemore et al. v. Dill, 93 Okla. 176, 220 P. 352. Gibson v. Farrell. 77 Kan. 454, 94 P. 783. There was no error in permitting the intervention.

There is next asserted want of issuance and service of summons on the petition in intervention which was filed January 29, 1944, the last answer day for defendants served by publication and 24 days after answer day for defendants personally served.

The petition in intervention was served upon all parties or their attorneys. The trustees filed their answer to the petition in intervention seeking affirmative relief, and thereby waived service of summons, if any was necessary. The guardian ad litem appeared and filed answers for the minor defendant Vera Ellen Franklin, as did the trustees subsequently appointed, seeking affirmative relief.

Wood v. Speakman, 153 Okla. 180, 5 P. 2d 121, Willis v. Aetna Life Ins. Co., 185 Okla. 647, 95 P. 2d 608; Boepple v. Estill, 181 Okla. 159, 72 P. 2d 798, cited by plaintiffs in error, have no application for the reason that in those cases the pleas were filed after answer day and without notice and failure of notice was not waived by pleading to the petition in intervention.

As to the defendants served by publication, the petition in intervention was filed before the time for answer day expired. No new service as to those defendants was required.

The next question presented is whether the judgment and decree of the trial court is correct, holding that the trustees had full legal power and authority to execute and deliver valid leases covering the full interest in the land involved, to extend in effect and duration for a possible period beyond the term of the trust.

In this connection, plaintiffs in error cite provisions of the will authorizing and empowering the trustees to hypothecate, bargain, sell, and dispose of any lands, tenements, or property real or personal whereof testator might be seized and possessed at the time of his death and upon such sale, to execute and deliver proper deeds or instruments of conveyance for vesting in the purchaser or purchasers the title thereof in fee. It is suggested that since the word "lease" is not mentioned, the trustees were without power to lease the land for oil and gas without the consent of the remaindermen. In this connection, Bogert on Trusts and Trustees, vol. 4, § 798, p. 2310, is cited. There the rule is stated as follows:

"Should mines and oil be discovered after the creation of the trust, it appears to be the rule in the United States that the trustee may not lease the property for mining purposes without the consent of the remaindermen."

See, also Perry on Trusts and Trustees (7th Ed.) §794, p. 1326; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N.E. 818.

That rule applies where the will devises the property to trustees in trust for the life tenant with remainder over to a designated person, without power in the trustee to sell or convey any interest in the real property. Since an oil and gas lease conveys an interest in real property, it is obvious that the trustees would have no authority to execute an oil and gas lease without the consent of the remaindermen unless authorized to do so in the will. It is pointed out in Ohio Oil Co. v. Daughetee, supra, that the will there construed did not authorize or empower the trustees to sell or convey any part of the real property involved, and for that reason the trustees were not authorized to execute valid oil and gas leases. A different rule applies where the will empowers the trustee to sell and dispose of the lands comprising the trust estate. In Avis v. First National Bank of Wichita Falls, 141 Tex. 489, 174 S.W. 2d 255, it is held:

A provision in a will giving the power to sell, indicates an intention on the part of the testator to confer power to execute oil and gas leases.

530

In Heyl v Northern Trust Co. et al., 312 Ill. A. 207, 38 N.E. 2d 374, it is held:

"Oil lease granting to the lessee the right to drill and procure oil for a certain term or for as long as minerals should be produced from realty in consideration for cash and payment to lessors of royalties on oil and gas produced, was a 'sale' by the trustee within provision of will authorizing trustee to sell a portion of the testator's realty."

In Layman v. Hodnett, 205 Ark. 367, 168 S.W. 2d 819, it is held:

"Under will expressly empowering testamentary trustee to sell all or any part of real estate, trustee was authorized to execute oil and gas leases, since minerals underlying land constitute a part of the 'real estate' and execution of lease for purpose of exploring land for minerals and for removal thereof by lessee is in effect a 'conveyance' of part of such land."

It is plain from the above authorities that the power to sell and convey the whole interest necessarily includes the power to sell and convey a lesser interest. Barnes v. Keys, supra. The trustees had full power and authority to execute and deliver the oil and gas leases covering the entire interest in the land belonging to the estate, which they had not sold, conveyed, or otherwise disposed of prior to the execution of such lease.

What is said by both parties to be one of the most important questions in the case is: Assuming the validity and correctness of the judgment, is it continuously binding on all the members, born and unborn, of the class designated as the "issue of Vivian Ada Franklin"?

In this connection, we consider the provisions of the will which give the executors and trustees, if in their discretion the income from the trust property is not sufficient for the support of the widow, Ella Stanley Holliday, the power to give her from the principal of the estate such sums as they deem necessary. Also, upon the death of the widow or upon the death of testator, in case he should survive his wife, to give the daughter, Vivian Ada Franklin,

from the principal, all or any part they may deem expedient. The above provisions are to be considered in connection with that part of the will which directs that "at the death of my daughter, Vivian Ada Franklin, the remainder of my estate, if any there be, go to the issue of my daughter, Vivian Ada Franklin."

At the date of the trial, the defendant Vera Ellen Franklin, a minor, was the only issue of Vivian Ada Franklin. But the class designated in the will as the "issue of Vivian Ada Franklin" is subject to open and let in after-born members. That class, including possible after-born issue of Vivian Ada Franklin, immediately upon the effective date of the trust, became the owner of a vested remainder in fee simple in the trust property, subject to conditional limitation, i.e., defeasible in whole or in part upon a condition subsequent. The only thing which could possibly defeat their future right to possession, title, and enjoyment would be some event transpiring after the establishment of the trust. That condition is that the trustees might, in the exercise of the power granted in the will, barter, sell, or dispose of the land. This is what is defined as a "condition subsequent." "A 'condition subsequent' operates upon estates already created and lays them open to defeat." "A 'condition precedent' is one that must be performed before the estate can vest." Re Assessment of Omitted Property of Kennedy et al., 177 Okla. 74, 59 P. 2d 134; Wellsville Oil Co. v. Miller, 44 Okla. 493, 145 P. 344; Fraley v. Wilkinson, 75 Okla. 21, 191 P. 156.

The rule is that in suits involving real property, the doctrine of representation may be applied to unborn contingent remaindermen. Thus a vested remainderman may represent others of his class. It seems that if there is no person entitled to the inheritance, it will be sufficient to bring in the life tenant; but ordinarily, the owner of the particular estate is not a sufficient representative of interests in remainder. It is essential to bring in also the owner of the first vested estate in remainder or

reversion. There is no such privity between a life tenant and a vested remainderman in esse that the presence of a life tenant as a party by representation makes the remainderman a party. So the contingent remaindermen in esse should be made a party in their own person. Where there is a trustee in the class of cases under consideration, he is a necessary party.

Lewis et al. v. McConchie et al., supra, is a case directly in point on the questions here presented. Therein it is held:

"A court of equity has jurisdiction and inherent power, based upon considerations of necessity and expediency, to appoint a trustee for unknown or unborn contingent devisees or interest holders under a will, and to construe the will and determine their possible rights; and where that is done, and the interests of such unknown or unborn devisees or interest holders is considered and found to be no greater than that of living parties to the action, who are properly represented; and where the final judgment of the court is that such living parties have no share or interest in the property, contingent or otherwise, a judgment against such unknown or unborn contingent devisees or interest holders is binding upon them, presently and forever, to the same extent as though they were living adult parties to the action."

It would follow that where in such proceedings the possible rights of unborn contingent devisees are considered and determined after appointment of a trustee, the judgment or decree as to such unborn contingent devisees is binding upon them, presently and forever, the same as if they were living adult parties to the action.

The next question presented is whether the trust created by the will of J. R. Holliday, deceased, and the decree of the county court of Oklahoma county making distribution thereunder is valid and has been so adjudicated. It is suggested that the judgment of the trial court does not expressly conclude and hold that the trust created by the will is valid, but that the judgment entered by the trial court necessarily presupposes or includes a holding that said trust is valid. When the district court determined and held that the last will and testament of J. R. Holliday and the decree of the county court distributing the property "should be interpreted and construed to vest a fee-simple title in and to the property described, in Ella Stanley Holliday and E. V. Dennis, trustees, and that the trustees named therein were invested with the legal right, power, and authority to execute and deliver the oil and gas leases asserted by the plaintiff and intervener," it necessarily included therein a holding that the trust created by the will is valid. If the trust were invalid, the trustees could have no such power, authority, or right. In effect, the validity of the trust had been adjudicated.

It is suggested, however, that there may be three possible challenges to the validity of the trust: (a) if the trust is on its face made to run perpetually, it is invalid; (b) if the trust instrument delays vesting any estate created thereby for more than the statutory period, it is invalid; (c) if the trust instrument contains restraints against alienation for a longer period than allowed by the statues, it is invalid.

There is nothing in the will which would render it invalid under any of the above propositions. The will does devise all the real property to the executors and trustees therein named and their heirs and assigns forever. Then follows the trust provisions and directions, including enumerated powers of the trustees and benefits to the beneficiaries, and finally that at the death of Vivian Ada Franklin, the secondary life tenant, the remainder of the estate, if any there be, go to the issue of the daughter, Vivian Ada Franklin. There the trust terminates. The use of the word "forever" in the devisory clause goes only to the character of the title in the trustees. It is similar to the habendum clause in a warranty deed. It merely emphasizes the fact that the fee-simple title should vest in the trustees, to hold the same in trust as directed,

but with full power to sell and convey the whole or any part of the land. Clearly, the trust is to terminate upon the death of the survivor of the two successive life tenants. The trust is within the limitations imposed by 60 O. S. 1941 § 172, and is also within the limitations prescribed by section 175.47, Title 60 O. S. 1941.

The trust is a valid, subsisting trust created in the manner and within the limitations prescribed by law.

Plaintiffs in error next assert that they petitioned the trial court to make determination of the exact interests of the parties; that the trial court should have done so, but declined, deeming it sufficient to consider and interpret the will only to the extent necessary to determine the question of validity of the leases.

The power is conferred and the duty is imposed upon a court of equity, which has acquired jurisdiction, to consider and determine all the rights and claims of the parties relating to the subject matter and to enter a decree that will finally determine them. 21 C. J. 661; Little Nick Oil Co. v. District Judge, 182 Okla. 94, 76 P. 2d 379; Sandlin v. Pharoah, 182 Okla. 442, 78 P. 2d 284.

The trial court should have determined the rights of plaintiffs in error under the will. We are asked to make such determination.

This being an equity case, this court will examine the record, if necessary weigh the evidence, determine the issues, and render such judgment as the trial court should have rendered. Harris v. Commerce Trust Co., 173 Okla. 38, 49 P. 2d 368; McDowell v. Droz, 179 Okla. 119, 64 P. 2d 1210; Mid-Continent Petroleum Corp. v. Bettis, 180 Okla. 193, 69 P. 2d 346.

The nature, character, and extent of the estates created by the will are to be determined upon the basis of the intention of the testator as ascertained from and disclosed by the language of the will. Cunningham v. Fidelity National Bank, 186 Okla. 429, 98 P. 2d 57.

Plaintiffs in error assert that under this rule, it must be determined that the various interests created and devised by the will and trust instrument vested immediately upon the death of testator, subject to the administration by the county court. Defendants in error concur in this construction, and we so hold.

Plaintiffs in error assert, and defendants in error concede, that the various interests so created and established should be defined and determined as follows:

(1) The trustees of J. R. Holliday, deceased.—Fee simple title in trust for stated trust purposes for the duration of the trust period (during the life of the survivor of Ella Stanley Holliday and Vivian Ada Franklin) subject, of course, to the right of the executors, to administer the estate in probate;

(2) Ella Stanley Holliday. — The full beneficial interest during her lifetime in and to the fund (C-M 33) directed by the trustor to be created by the trustees, an equitable estate in the corpus of the trust;

(3) Vivian Ada Franklin.—Contingent, secondary beneficial interest in and to the aforesaid fund during the remainder of her life following the death of Ella Stanley Holliday. The contingency arises out of the possibility that the property in trust might all properly be disposed of by the trustees and the proceeds exhausted by payment from "the fund" to Ella Stanley Holliday (C-M 33), an equitable estate in the corpus of the trust;

(4) The issue of Vivian Ada Franklin.—Fee simple title in contingent remainder, limited and defeasible upon condition subsequent, this being by disposition in whole or in part by the trustees of the corpus of the trust, including any oil and gas lease, or leases, or mineral conveyances executed by the trustees.

The plain language of the will so provides and we hold that the various interests are as above stated, and the decree of the trial court is modified accordingly.

The next question presented is: "Assuming the validity of the leases in question, to whom and in what proportion, if divisible, is the royalty provided therein to be paid?"

Bonuses and delay rentals are not mentioned, but they are to be considered as well as royalties. Four possible holdings are suggested. Two of these suggestions are based upon possible holding to the effect that the trustees had no power to lease the land for oil and gas, and one is based upon the possible holding by this court that the trust is invalid. We have held contrary to three of the suggested possibilities and they need not be considered.

The trust and the leases executed thereunder being valid, the proceeds are to be distributed under the law applicable and the terms of the will. Under the authorities hereinbefore cited, oil and lease bonuses and delay rentals are held to be income and any money thus paid to the trustees would go first to the widow, Ella Stanley Holliday, during her lifetime, and such as may be received thereafter and during the life of Vivian Ada Franklin will go to her. Royalty will go to the fund to be held for the remaindermen, the issue of Vivian Ada Franklin, subject to be paid to either Ella Stanley Holliday or Vivian Ada Franklin under the terms of the will. Interest on the royalty fund would be income and go to the life tenant, the entire estate, including any royalty money in the hands of the trustees, would go to the then living issue of Vivian Ada Franklin.

In this connection, defendants in error call our attention to the provisions of 60 O. S. 1941 § 175.33, which provides that money received as extension payments on a lease or bonuses paid for the execution of the lease should be deemed income, but money received as consideration, whether royalties or otherwise, for the permanent severance of natural resources from land, shall be apportioned between the principal and income as there provided, namely, such percentage thereof as is permitted to be deducted for depletion under then existing laws of the United States for income tax purposes should be treated as principal, and invested or held for the remainderman, the balance to be treated as income subject to be disbursed to the tenant or persons entitled thereto, or if no provision for such deduction for depletion is made by then existing federal laws, 20 per cent of the net proceeds thereof each year shall be treated as principal and the remainder as income.

By 60 O. S. 1941 § 175.53 (Title 60, ch. 4, sec. 54, S. L. 1941) the terms of the act of which said section is a part are made applicable in the construction of and operation under:

A. All agreements containing trust provisions entered into subsequent to the effective date of the act of which said provisions are a part.

B. All wills made by testators who shall die subsequent to the effective date of such act.

C. All other wills and trust agreements and trusts relations insofar as such terms do not impair the obligations of contracts or deprive persons of property without due process of law under the Constitution of the State of Oklahoma or the United States.

Said act did not become effective until fourteen days after the death of testator herein, and therefore does not apply under subdivisions A and B. It does apply under C insofar as it would not operate so as to deprive the remaindermen of property without due process of law under the Federal or State Constitutions.

The rights of the remaindermen under the will here involved became vested in them before the enactment of said statutes. The right of the issue of Vivian Ada Franklin to have the royalties which may accrue in the future under the leases placed in a fund to become a part of the principal or corpus of the estate, subject only to be paid by the trustees to either Ella Stanley Holliday during her lifetime, or to Vivian Ada Franklin during her life-

534

time and after the death of Ella Stanley Holliday, became vested in them immediately upon the death of J. R. Holliday.

A legislative act which undertakes or operates so as to deprive one person, against his consent, of a vested estate and to vest it in another person for his private use, is not "due process of law." Reynolds v. Baker, 46 Tenn. 221; Green v. Edwards, 31 R. I. 1, 77 Atl. 188.

The apportionment of royalties under section 175.33, supra, would have the effect of increasing royalty accruals payable to the life tenant as income and correspondingly reduce the principal or corpus of the estate which may go to the remaindermen at the termination of the trust. This would amount to depriving the remaindermen of property without due process of law. Therefore, the terms of section175.33, supra, do not apply to the construction of or operation under the will here involved.

Finally, plaintiffs in error ask this court what they consider as an important question as to the meaning of the term "the issue of my daughter, Vivian Ada Franklin" as that term is used in the will of J. R. Holliday.

The question presented is whether the class named as the "issue of my daughter Vivian Ada Franklin" would be composed of all the children of the body of Vivian Ada Franklin living at the time of the death of the survivor of Ella Stanley Holliday and Vivian Ada Franklin and also all children of any deceased child or children of Vivian Ada Franklin. It is clear that the words "my daughter" as used in said phrase were used to identify the particular "Vivian Ada Franklin" whose issue are to take the remainder.

If at the time of the death of Vivian Ada Franklin, there is or has been no child born to her other than the defendant Vera Ellen Franklin and that child is then living, she would of course take the entire remainder. If at that time Vera Ellen Franklin be deceased, leaving children born to her, they would, under the rule stated in McCoy

v. Lewis, 166 Okla. 245, 27 P. 2d, 350, be included in the issue of Vivian Ada Franklin. It is there held:

"In its legal sense, as used in statutes and wills and deeds and other instruments, 'issue' means descendants, lineal descendants, offspring."

This is but a statement of the general rule. See 33 C. J. 818, and a long line of cases cited in support of the text.

In the event a child or children other than Vera Ellen Franklin be born to Vivian Ada Franklin and such child or children and Vera Ellen Franklin be living at the date of the death of the survivor of Ella Stanley Holliday and Vivian Ada Franklin, then all such children would take the remainder, share and share alike.

There is still a possibility that Vivian Ada Franklin may, upon her death, leave surviving her one child or more and children of a deceased child or children. The question then might arise whether the grandchildren would share in the remainder as the "issue of Vivian Ada Franklin."

The general rule is found stated in 33 C.J. 818, as follows:

" 'Issue' ex proprio vigore indicates succession. Where its meaning is unrestricted by the context, it imports representation, and is a word which lends itself very easily to the expression of representation. When unconfined by any indication of an intention to the contrary it includes all descendants of every degree, and every generation."

Thereunder it is clear that children of any deceased child or children of Vivian Ada Franklin would take, under the will, by representation, along with living children of Vivian Ada Franklin.

If there be grandchildren only of Vivian Ada Franklin, they would take by representation. The judgment and decree, as modified, is affirmed.

GIBSON, V.C.J., and OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur.